McLendon *v.* Horton.

1. The plaintiff's evidence showing that her mother, while in possession of the premises in dispute, and holding the same under a deed, had conveyed the same to another, who reconveyed to the mother for life, with remainder to her children (these conveyances being duly recorded, and the mother remaining in possession for some time thereafter), that the plaintiff was the only child of her mother, and that the latter was dead, these facts make out a *prima facie* case for the plaintiff in her action against the defendant for a recovery of the property.

2. The defendant having shown that he entered the premises and claimed the same under a tax title, which was void, and having also, both by his pleadings and his evidence, set up and claimed title under one to whom the plaintiff's mother had conveyed by a deed junior to the above mentioned conveyance made by her, the plaintiff was entitled to recover. Even if the defendant's entry under the tax title was *bona fide*, yet as he virtually admitted title in the plaintiff by tracing the title upon which he finally relied to the same source as that of the plaintiff, and her title derived from this common source was better than his, her right to the property, as against him, was sufficienty established.

3. As the evidence showed that the defendant had received in rents amounts more than sufficient to reimburse him for all improvements, taxes and other expenditures upon the property, and there was no recovery by the plaintiff of mesne profits, errors, if any, in the instructions given to the jury with respect to these matters were immaterial. The verdict upon the substantial merits of the case was right, and we find no error authorizing the granting of a new trial.

November 12, 1894.

Complaint for land. Before Judge Lumpkin. Fulton superior court. March term, 1894.

John C. Reed and Orlando McClendon, for plaintiff in error.    A. A. Manning and Rosser & Carter, *contra.*

Atkinson, Justice.

Ida Horton, whose maiden name was Ida McMasters, sued McLendon in ejectment for a certain lot of land in the city of Atlanta, claiming mesne profits. The abstract of title upon which she based her right of recovery consisted of a series of deeds, commencing, in point

of date, in 1863, and running down through James M.
Johnson to Jane McMasters, the last mentioned deed
being dated May 11th, 1870, from Jane McMasters to
T. K. Oglesby, dated February 13th, 1871, and then a
deed from T. K. Oglesby, of date February 13th, 1871,
back to Jane McMasters. The deed last mentioned quit-
claimed the premises to Jane McMasters for and during
her natural life, and, at her death, to her children for
life, then to their heirs and assigns. It was further
alleged that Jane McMasters was dead, that she was
the mother of Ida Horton, and left no other child. It
was further alleged that Jane McMasters was in the
actual possession of the premises in the years 1870 and
1871 up to and including the year 1877, and from that
date to the year 1884 by her guardian. All of the deeds
above enumerated were duly recorded. The defendant
pleaded the general issue; and likewise filed an equitable
defense to the effect, that in the year 1884 the premises
described, under a tax execution in favor of the City of
Atlanta against one Mrs. F. E. C. Stewart, had been
levied upon and sold, and that at the sale he became the
purchaser, that he bought in good faith and had entered
and made valuable improvements greatly increasing the
value of the premises; and prayed to be allowed to set
off his claim for enhanced value against mesne profits,
and that in the event it should appear that the mesne
profits did not amount to the increased value because of
the improvements, the court would in his behalf decree
the excess to be a charge upon the premises in dispute.
Defendant further pleaded, that on June 19th, 1884,
Jane McMasters had conveyed the premises to one Car-
michael, who in turn had conveyed to him.

The plaintiff introduced the deeds herein specifically
described as having been set out in the abstract attached
to her declaration; showed that she was the only child
of Jane McMasters, that Jane McMasters was dead, that

she was in possession at the time of the execution of the deeds and remained there for several years, that about the year 1876 she became insane, was confined in the lunatic asylum for a number of years, and while she was released from the asylum about the year 1884, her mind was not entirely restored and she died in this condition the year following. It was further shown that from the year 1880 up to and including the year 1884 the premises were occupied by a tenant who paid rent to the person who had been previously appointed guardian for Jane McMasters, she having been adjudged a lunatic.

Upon the conclusion of the plaintiff's case, the defendant moved a nonsuit upon the ground that the plaintiff had failed to show a title which would warrant a recovery; and the motion was overruled.

The defendant then introduced a deed from the marshal of the City of Atlanta to the premises in dispute, together with the execution upon which it was based. The execution was an ordinary tax execution in regular form, and against Mrs. F. E. C. Stewart. He likewise introduced the books of the tax-assessors of the City of Atlanta, showing that the premises in dispute had been, for the year 1884, assessed as the property of Mrs. Stewart, that the taxes thereon had not been paid, and that notice of the levy had been delivered to a negro woman whom the city marshal had found in possession. The defendant further introduced a deed from Jane McMasters to Carmichael, dated June 19th, 1884, and a deed from Carmichael to himself. The value of the premises for rent during the time the same were occupied by defendant was shown to be in excess of the value of the improvements and the sums paid for taxes and other charges incurred by the defendant by way of assessments for street improvements. It was not shown that the defendant named in the tax execution was ever in possession of the premises in dispute, ever claimed title

thereto or exercised any act of dominion over them. It was not shown that such person ever existed, and none of the witnesses, including the city officials who assessed the property, who issued the execution or who conducted the sale, had ever seen her, or had any knowledge of her existence.

1. The court, upon motion, struck so much of the defendant's plea as claimed a judgment for the excess of improvements over mesne profits, but allowed the plea to the extent of permitting the one to be set off against the other. Exception was taken to this ruling. In addition to this, exception was taken to certain instructions to the jury, to the effect that they might consider the value of the improvements, and allow such value as a set-off against mesne profits. Whether or not error was committed in this ruling or in these instructions, is not material. The undisputed testimony shows that the sum of the mesne profits, after allowing all reasonable charges for taxes and street assessments paid by the defendant, was considerably in excess of the value of all improvements made by him, and as the jury did not find any sum for mesne profits, the set-off was much more favorable to the defendant than he had a legal right to expect, and this cannot be made a cause of complaint by him.

2. The real questions made in the case involve the claim of title between the respective parties, and arise upon a refusal to charge, in effect, that the plaintiff was not entitled to recover upon proof of prior possession alone; and a counter instruction by the court to the effect, that if the jury should believe that Jane McMasters was in the quiet possession of the premises under claim of right, and that if she was unlawfully evicted therefrom by the defendant, she and those claiming under her would be entitled to recover upon her prior possession as against any person other than the true

owner. There are a number of exceptions covering this branch of the case, but upon analysis they all present the question made as above.

It is quite evident from the testimony in this case that Jane McMasters entered into the possession of the premises in the year 1871 and remained in the actual occupancy thereof until the date when she was adjudged a lunatic, which appears to have been in 1876 or 1877. It further appears that her regularly appointed guardian, by a tenant who recognized him as landlord and paid him the rent, was in possession from the year 1880 until the date of the sale of the property under the tax execution against Mrs. Stewart, under which sale the defendant claimed a right of entry. This of itself affords strong presumptive evidence of the continuity of Jane McMasters' possession from the date of her original entry under Johnson until the date of her final eviction under the tax sale. But assuming that this presumption does not afford sufficient evidence of an uninterrupted possession to establish in her a perfect prescription based upon the Johnson deed as color of title, the two possessions establish the fact that there was no abandonment of her claim to the right of possession up to the time of her final eviction. The question then is, her possession being proven, and she holding the life-estate, can the remainderman, at her death, recover upon the force of a possession from which she was unlawfully evicted during her life? The life-tenant holds the estate subject to the right of the remainderman at the termination of the estate upon which it is limited, and immediately upon the termination of the life-estate the remainderman is entitled to the possession. The life-tenant can convey no greater interest therein than the residue of her estate remaining at the date of the conveyance. Therefore, the conveyance by the life-tenant of the fee, the deed under which she held being duly

recorded, conveyed to Carmichael, her grantee, no right which would entitle him and his lessees to the possession of the premises after the termination of the life-estate. So that, treating the defendant in this case as having entered by virtue of the deed from Jane McMasters to Carmichael, he was bound to surrender at the termination of the life-estate, and he, entering in subordination to her right expressed in the very deed under which Jane McMasters held possession, is estopped to deny the right of the remainderman, the present plaintiff.

Treating the entry of the defendant as having been by virtue of the tax sale, what is his situation? The law, considered in relation to the subject upon which it operates, is, to a great extent, a science of applied presumptions. From given hypotheses the law makes certain deductions, and upon these deductions it raises presumptions that in themselves constitute the great body of the law, which, independent of statutory enactment, depends upon right reason for support. This is the true law of the land—that law which is the cornerstone of most of our property rights. One of these presumptions, and the one with which we are now to deal, is the presumption of title to property arising from possession alone. The law presumes that title follows the possession of property, and this presumption applies to personal as well as to real property. A person, upon proof of prior possession, may recover personal goods from another who wrongfully deprives him of their possession, and is entitled in law to maintain his prior possession against the claim of any one except the true owner. So with real property, upon the presumption of title arising from proof of a bare possession, a person, except as against the true owner, may recover the premises from any one who wrongfully deprives him of the possession. This is the legal equivalent of our code provision, that one may recover in ejectment upon his

prior possession alone, as against one who subsequently acquires possession by " mere entry and without lawful warrant or authority." Tested by this rule, how was the entry of the defendant effected? The tax execution was issued against the lands and tenements, goods and chattels of one Mrs. Stewart. It was not shown that this person was ever in possession of the premises, that she ever claimed title thereto, or that she ever returned the same for taxes or exercised any act of ownership whatever over them. No witness was produced who knew or had ever seen the defendant in execution. The tax lien could attach only to her estate, and yet under such an execution the city marshal sells the property in dispute, the City of Atlanta becomes the purchaser, and the defendant in this case purchasing from the City of Atlanta, the tenant in possession is evicted and the possession delivered to this purchaser from the city. The only *lawful* warrant upon which a tenant can be evicted is a process against the tenant himself, or against the person under whom such tenant claims his right of possession. Under a judicial sale only the defendant in execution or his privies in estate can be evicted. The same rule applies to tax sales. Therefore, if an officer, with an execution against one person, seizes property in possession of another, he can justify the seizure only by showing that the property seized was really the property of the former, or his privies. So in this case, the execution not being against the person in possession, and there being no privity between the defendant in execution and such person, the sale of the property and eviction of the tenant in possession was a trespass; and it not being made to appear that the defendant in execution was the owner of the premises or had any interest therein, the entry of the lessor of the defendant in this action, in so far as concerned the person holding the prior possession, was without lawful warrant or

authority and was in law a mere entry.  As against such an one, the first possessor was entitled to recover upon her prior possession alone.  So that, whether the defendant be treated as having entered as a purchaser under the life-tenant, or whether we treat him as having entered under the alleged tax sale, the plaintiff was in either event entitled to recover.  Such were, in substance, the instructions complained of, and, under the views here expressed, we are bound to adjudge them correct; and the verdict being supported by the evidence in every essential particular, the court properly refused a nonsuit and properly denied a new trial.

*Judgment affirmed.*