### DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1897.

102   1
f111 283
e111 296

### DUDLEY *et al. v.* JOHNSON *et al.*

1. Neither in an action of ejectment nor in complaint for land can a defendant set off the value of improvements placed thereon by him, to an amount beyond the sum which the plaintiff would be entitled to recover by way of mesne profits; nor can a defendant in such a case, upon an equitable answer, recover against a plaintiff the value of improvements in good faith placed upon the premises by such defendant, and have the same, by equitable decree against the owner, made a charge upon the premises on which they are placed, and from which the defendant is evicted under a judgment rendered against him in such suit.
2. Under the facts of the present case, the court did not err in directing a verdict in favor of the plaintiff.

Argued June 28, — Decided July 20, 1897.

Complaint for land. Before Judge Hart. Morgan superior court. September term, 1896.

*Foster & Butler*, for plaintiffs in error.
*George & George*, contra.

ATKINSON, J. In 1886 Hagar Reynolds, or Randall, died intestate in possession of a tract of land containing about two acres, to which she held title. There has been no administration on her estate. In 1887, Ned Randall, who was then in possession of the land claiming it as his own, induced his daughter Lucinda Dudley to move upon the land with her daughter Henrietta Dudley, and in 1890 conveyed the land to

1

them by a deed which was recorded August 14, 1892. Lucinda and Henrietta were still upon the land and in possession of it when, on August 13, 1895, Lucius Johnson, Susan Jenkins and America Jenkins brought suit against them to recover the premises and mesne profits, the plaintiffs alleging that they were the sole surviving heirs of Hagar Reynolds, or Randall. The defendants, in their answer, set up that defendant Lucinda Dudley was induced to move upon the land by the promise of Ned Randall, that if she would take care of him until he died, the land should at his death be hers, he telling her that he owned it. The defendants were bona fide holders of the premises, and have been ever since 1887, and since they have been in possession, have placed upon the land valuable, necessary and permanent improvements (the character and extent of which are set out in the plea), amounting in value at least to $500, and without which the land would be valueless; and they have also paid the taxes on the land since 1887, amounting to a sum stated. These expenditures were made by them under the belief that they had a good title to the land, and the plaintiffs stood by and saw the improvements made without setting up any claim to the premises, and without making any protest. The defendants further alleged that the plaintiffs are insolvent, and that it will be inequitable to force the defendants to lose the sums so expended by them; and they prayed that the same be set off against any mesne profits that the plaintiffs might recover; and inasmuch as the sums so expended far exceed any just claim for mesne profits, that should a judgment be rendered finding the premises in dispute for the plaintiffs, the defendants have judgment for the difference, which difference they alleged amounted to $481; and that they have a special lien upon the premises therefor. By amendment they offered to pay to the plaintiffs, in case it should be found that the property sued for is the property of the plaintiffs and that defendants have no title, the value of the land without the improvements set out in their plea.

Upon the trial of the case, after hearing the evidence, the court passed an order as follows: "It appearing to the court,

after hearing the evidence in the case, that the defendants are relying solely upon a deed from Ned Randall, who is a stranger to the title, and it further appearing that they hold merely under a gift, and it being conceded that the plaintiffs are the heirs at law of Hagar Randall, a verdict in the case is directed in favor of the plaintiffs." A verdict was accordingly rendered, finding for the plaintiffs the premises in dispute, without mesne profits; and to the directing of the verdict the defendants excepted. They excepted also to other rulings hereafter set out.

At the trial, deeds recorded in 1892 and 1893 were introduced, showing title in Hagar Reynolds, and it was admitted that she died intestate and in possession of the premises. It appeared from the evidence that she left no child surviving her. She was a person of color, and before emancipation had lived with Ned Randall, under whom the defendants were claiming, and he was also a person of color and a slave of the same master. "By the master's consent they were man and wife." A witness testified that they were married "like slavery-time marrying"; that Ned had no other wife; and that they lived together as man and wife until they got free. The same witness afterwards testified that they were not living together when they were freed. It was admitted that in 1869 Hagar Reynolds was married to Henry Stewart under a license. He lived with her a short time afterwards, and went off. There was evidence that Hagar and Ned Randall lived together again, and were living together at the time of her death. There was also evidence that she lived with Charles Saffold, a colored man, as his wife, before and at the time of emancipation, and afterwards until his death. Hagar had one sister, Sarah, and two brothers, Baz and Bill, all of whom were children of Hagar's mother. Plaintiff Lucius Johnson is the only child of Hagar's sister Sarah, who died in July, 1895. Plaintiff Susan Jenkins is the widow of Oliver Jenkins deceased, a son of Hagar's brother Bill; and plaintiff America Jenkins is the only child of Oliver and Susan. Hagar's husband Henry Stewart, her brothers Baz and Bill, a daughter of Bill named Adeline, and other persons who, if alive, would be

her heirs at law, moved away from the neighborhood in which they and witness resided, and have not been heard from in many years. Some of them have been reported dead. There was evidence in support of the allegations made by the defendants in their pleadings, except as to the alleged promise of Ned Randall, and as to its constituting the inducement under which Lucinda Dudley moved upon the premises.

The court ruled out the testimony of Lucinda Dudley, offered on the part of the defendants, that she was induced by her father, Ned Randall, who was then in sole possession of the premises in dispute, to move upon the premises, and if she would care for and maintain him and improve the place, it should be hers and her child's at his death; and that acting upon this promise she did move upon the place, did care for and maintain him, improved the place, preserved it and paid the taxes thereon, he telling her that it was his property. To the ruling out of this testimony the defendants excepted.

The court ruled out offered testimony of Lucinda Dudley, that she, in company with her father and others, on the day of the execution of the deed under which she claimed, went to the office of Calvin George, a competent attorney, and after hearing all the facts and examining the deeds to Hagar Randall, said attorney told her that her father could give her good titles, and then drew the deed to her, and it was immediately put on record; and that after this the defendants made additional improvements on the premises. To the rejection of this testimony the defendants excepted.

The controlling question in the present case is, whether the court erred in directing a verdict in favor of the plaintiffs; and the solution of that question involves the determination of another: whether a bona fide purchaser who enters under an independent and adverse claim of title is, when sued in ejectment by the true owner, entitled, upon filing an equitable plea, to set off improvements made by him to the extent of the mesne profits, and in addition, to a decree in his favor against the owner for any excess of value in improvements made by him after the allowance of mesne profits to the plaintiff. The ancestor of the plaintiffs died in possession. They

proved their right as her heirs at law. The grantor of the defendants entered without title. They purchased from him in good faith, and took a conveyance from him. Prescription had not run in their favor. They made improvements upon the premises, which, according to the evidence, were far in excess of the value of the land itself. Being sued in ejectment, they undertook, by an equitable plea, to recover a judgment against the plaintiffs, to be a charge upon the land for such sum as improvements placed by them upon the premises might be in excess of the sum to which the plaintiffs were entitled by way of mesne profits. So, it will be seen that, under the pleadings and proof in the present case, the question above stated is squarely made. The plaintiffs were not seeking the aid of a court of equity, but sued upon their strict legal rights. They were, therefore, not required, upon equitable principles to make any concession to the defendants.

This question has often been approached by this court, but never determined. In dealing with the subject of improvements, our Civil Code, § 3753, makes this provision: "Against a claim for mesne profits, the value of improvements made by one bona fide in possession under a claim of right, is a proper subject-matter of set-off." The Civil Code, § 5087, in dealing with a trespasser, provides: "A trespasser can not set off improvements in an action brought for mesne profits, except when the value of the premises has been increased by the repairs or improvements which have been made. In that case the jury may take into consideration the improvements or repairs, and diminish the profits by that amount, but not below the sum which the premises would have been worth without such improvements or repairs." In the case of *Beverly* v. *Burke*, 9 *Ga.* 440, the principles announced in both sections of the code above quoted are recognized and applied. The case of *McPhee* v. *Guthrie*, 51 *Ga.* 83, is authority only for the proposition that, as against the holder of a prior mortgage lien, one who purchases land in good faith and makes valuable improvements upon it is entitled to be paid for such improvements, leaving the mortgage lien intact upon the property as it stood before it was improved; and that in such a case, upon an

equitable plea filed, the person who purchased such property and placed upon it valuable improvements is entitled, as against the mortgagor, to be allowed the value of his improvements. In the case of *Fields* v. *Carlton*, 75 *Ga.* 554, this court having under review the case just above referred to, placed that construction upon it, and the court, speaking through Chief Justice Jackson, who delivered the opinion, says: "We have examined the case of *McPhee* v. *Guthrie & Co.*, in 51 *Ga.* 83, and find that the case there was decided on its own particular facts. The title had not gone into Guthrie & Co., but simply a mortgage-deed was made to them, and Chief Justice Warner, in the opinion, lays stress on that fact. They were mortgagees, and had a lien in law and equity only on the land as it stood before sold to McPhee, who put improvements upon it; and the court held that, in that case, the purchaser could set off improvements in equity, and recover their value, after paying the principal and interest on the mortgage out of the land before improved, directing the sale of the land, and that the mortgage be first paid out of the land, less the improvements, and then the value of the improvements be paid to McPhee, the claimant."

In *Dean* v. *Feely*, 69 *Ga.* 804, this court only went to the extent of allowing the purchaser for value without notice to set off improvements against all mesne profits before, as well as after, their erection, there being no doubt about the bona fides of the purchaser; but the ruling in that case allowed the purchaser only to extinguish mesne profits, but not to trench at all upon the corpus. Indeed, in the case last cited, the court expressly reserved the question here made for future consideration, and said: "The defendants have argued their right to have a verdict for any excess in value of improvements over the rents, which should constitute a lien upon the land for the payment of such excess. The pleadings in the case do not make the question, and no ruling of the court below upon that subject is excepted to and brought here for our review; we therefore decline to decide the point."

In the case of *Clewis* v. *Hartman*, 71 *Ga.* 811, this court ruled: "A plaintiff in ejectment having abandoned all claim

for mesne profits, a plea setting up that defendant had erected improvements and paid taxes was not good as a plea of set-off. Whether, with proper pleadings, relief could be had on account of substantial and permanent improvements, increasing the value of the land, is not decided."

In the case of *Tripp* v. *Fausett*, 94 *Ga.* 330, this court ruled: "One who enters upon land under a conveyance from one not in possession and, so far as appears, not having any color of title, enters and improves the premises at his peril; the true owner is under no obligation to account to him for taxes paid, or for the costs of improvements over and above the mesne profits accruing from the land during the period of his occupation." The court in that case ruled that one who enters under such circumstances is not entitled to the value of his improvements over and above mesne profits; it does not decide that one entering under different circumstances and in good faith would be so entitled.

A similar question was again made in the case of *McLendon* v. *Horton*, 95 *Ga.* 54, but again the circumstances under which it was presented to the court did not require its determination. In that case this court said: "The court, upon motion, struck so much of the defendant's plea as claimed a judgment for the excess of improvements over mesne profits, but allowed the plea to the extent of permitting the one to be set off against the other. Exception was taken to this ruling. In addition to this, exception was taken to certain instructions to the jury, to the effect that they might consider the value of the improvements, and allow such value as a set-off against mesne profits. Whether or not error was committed in this ruling or in these instructions, is not material. The undisputed testimony shows that the sum of the mesne profits, after allowing all reasonable charges for taxes and street assessments paid by the defendant, was considerably in excess of the value of all improvements made by him; and as the jury did not find any sum for mesne profits, the set-off was much more favorable to the defendant than he had a legal right to expect, and this can not be made a cause of complaint by him."

Thus we have shown that the question now for consideration

is an open one in this court. Whatever statutory provision may have been made elsewhere governing this question, and whatever may be the rule upon this subject in cases in which the plaintiff is seeking, upon equitable principles, relief from a court of equity, the provisions of our code bearing upon this subject do not recognize the right contended for by the defendants in this case. They allow a demand for mesne profits to be extinguished by setting off against it the value of improvements made, but extend no further the right of the defendants to an allowance for improvements. It would seem at first glance that the claim of the defendants has strong support in good conscience and in good morals; and yet, on the other hand, to allow such a claim might tend to encourage negligence upon the part of anticipating purchasers in looking to the soundness of titles upon which they must in the future rely to support their claims to property. Generally, one who purchases from another the property of a third person, and takes it into his possession, must look to his warrantor to reimburse him in the event the title obtained by him should prove defective; and the allowance, to the extent claimed in this case, of a contrary doctrine might tend to encourage the strong to purchase from strangers, who happened to be in possession, the property of the weak, with the hope of being able, under the cover of such a doctrine, to improve them out of their estates.

The General Assembly, by making provision upon this subject, will be presumed to have settled the policy of this State with respect to the allowance for improvements; and it should be left to the wisdom and discretion of that body to say whether rights, in addition to those stated in the sections of the code above referred to, should be conferred upon persons who enter, whether in good or bad faith, upon the property of another, and make valuable improvements thereon. In the present condition of our statute law, we find no warrant for the doctrine contended for by the defendants in this case; and, therefore, affirm the judgment of the court denying a new trial.

*Judgment affirmed. All the Justices concurring.*