## AYER et al. v. CHAPMAN.

1. Where remaindermen recover land, their right to mesne profits is limited to such as issue after the falling in of the precedent life-estate. In such a case the defendant who seeks an excess judgment against the land under the improvement act of 1897 (Acts 1897, p. 79; Civil Code §§ 5887-8), for improvements erected by his predecessors in good faith during the term of the life-tenant, is not bound to account for mesne profits which such predecessors should have paid.

2. In such an action, where the land contained the walls and framework of an old dwelling-house of substantial value, which in such condition would not yield any income at the time the defendant's predecessors entered possession, but the house after being renovated and added to by the defendant and his predecessors during their respective terms caused the property as a whole to be income bearing, the mesne profits

were apportionable between the plaintiff and the defendant on the basis of the proportion that the value of the land, walls, and framework bore to the value of the improvements erected by the defendant and his predecessors.

3. The improvement act of 1897 (Acts 1897, p. 79; Civil Code, § 5588), in so far as it authorizes a defendant in an action for land who has obtained an excess judgment for improvements upon the land after the plaintiff has failed to pay the amount of the excess judgment, to pay the ascertained value of the land without the improvements, and have a conveyance of the whole property, is not violative of the due-process and equal-protection clauses of the constitution.

No. 447. FEBRUARY 22, 1918.

Complaint for land. Before Judge Hammond. Richmond superior court. June 20, 1917.

A testatrix died in 1868. She bequeathed a certain lot of land in the city of Augusta to a trustee for the use of Julia Euphemia Brooks (afterwards Graham) during life, with remainder over to her children, but if she should die without leaving child or children, then in trust for other designated persons and their children. The first-named cestui que trust (the life-tenant) died on September 22, 1909, without leaving any child. One of the other designated persons to take in contingent remainder predeceased the life-tenant, leaving children; and the other to take in contingent remainder died on September 22, 1912, leaving children. These two sets of children will for convenience be referred to hereafter as plaintiffs. The land was cried off at a void sheriff's sale for taxes on the estate of the testatrix, on November 5, 1889, at which sale Charles G. Houston became the purchaser. He having died, the land (on which were some brick walls and a framework of an old dwelling-house worth about $1,000) was sold by the administrator of his estate, on December 4, 1891, to Catherine J. Houston, who immediately entered possession, and on May 7, 1892, she sold an undivided half interest to Marie F. Houston, who, on March 26, 1895, sold that interest to Mrs. Elizabeth S. Houston. On September 29, 1903, Catherine J. Houston (who by marriage had become Catherine J. Fischer) and Mrs. Elizabeth S. Houston sold the land to Thomas L. Chapman, who for convenience will hereafter be called the defendant. These several grantees, from the time of the administrator's sale, being in possession in good faith, made permanent and valuable improvements by rebuilding the old house and adding to it from time to time during their respective terms, and maintained possession until April 3, 1914, when plain-

tiffs instituted an action against the defendant to recover the land with mesne profits from the date of the death of the life-tenant. Among other things the defendant pleaded the improvements made by himself and those under whom he claimed, as a set-off in excess of mesne profits, and as a charge upon the property on account of the improvements. Upon the trial, the jury returned a special verdict finding for the plaintiffs the premises in dispute, and answering questions propounded to them as follows: "1. State what you find to be the mesne profits per annum, based on fair rental value during the time the property was in possession of Catherine J. Houston (afterwards Fischer) and Mamie F. Houston and Mrs. Elizabeth S. Houston, that is to say, from December 4, 1891, to September 25, 1903. Ans. $180.00 per annum. 2. State what you find to be the mesne profits per annum, based on fair rental value during the time the defendant, Thomas L. Chapman, has been in possession, that is to say from September 25, 1903, to the date of this trial. Ans. $216.00 per annum. 3. State what you find to be the mesne profits per annum, based on a fair rental since the death of the life-tenant, Julia E. Graham, on September 22, 1909, up to the date of this trial. Ans. $216.00 per annum. 4. State what you find to be the present value of permanent improvements put on the property by defendant's predecessors in title, that is from December 4, 1891, to September 25, 1903. Ans. $1450.00 net. 5. State what you find to be the present value of permanent improvements put on the property by defendant, that is to say, from September 25, 1903, to the date of this trial. Ans. $200.00. 6. State what you find to be the present value of the property including the present value of the permanent improvements. Ans. $2750.00. 7. In what proportion should the rental value be divided between the lot and the walls and timber on the one hand and the permanent improvements on the other. Ans. One third for walls, etc.; two thirds for improvements. 8. State what was the fair rental value of the property per annum from 1909 to date in the condition it was in when C. G. Houston took possession of the property in 1890. Ans. No rental value. 9. State total present value of all permanent improvements placed on said property by Thomas L. Chapman and all the parties under whom he claims, including those put there by Mrs. Fischer and Charles G. Houston. Ans. $1650.00 net." The judge entered judgment in favor of the defendant for $1650, as a charge against the land for improvements

on the basis of their full value at the time of the trial, whether the improvements were made by the defendant or his predecessors, making no allowance on account of the value of the walls and timbers of the old structure, and among other things directed: "that the payment of said sum of $1650.00 be made by plaintiffs to the defendant within ten days from this date; and upon said payment being made within said time the plaintiffs shall be entitled to the possession of said property. It is further ordered and decreed that in the event the plaintiffs fail, within the period of 10 days, to make the aforesaid payment to the defendant, thereupon the defendant shall have the right to pay to the plaintiffs the sum of $1100.00 within a period of 20 days from the date hereof, the same being the value of said property as found by the jury, less the value of the excess of improvements over mesne profits, and upon the payment of said sum by the defendant to the plaintiffs within said time, with all court costs of these proceedings, the defendant shall acquire and have all of the rights and titles that the plaintiffs had and held in and to said property. And the plaintiffs, upon said payment being made to them, shall forthwith execute to the defendant good and sufficient titles to said lands, or, upon the failure thereof to execute such titles, this decree shall effectually place all of the titles of plaintiffs in said property in the defendant, his heirs and assigns. It is further ordered and decreed that in the event that neither party pays to the other the above-mentioned sums within the times specified, the premises shall be sold by L. B. Guillebeau, who is hereby appointed a commissioner for that purpose, and the proceeds of such sale divided between the plaintiffs and defendant in the ratio or proportion of $1100 to $1650; unless the plaintiffs shall elect to recover the value of the land itself, in which case they shall, within 5 days from the expiration of the period of 20 days above fixed, have execution issued upon the verdict and this judgment for the sum of $1100.00 and the cost of this action, which shall be levied upon the said lands and improvements, and the same shall be sold by the sheriff after due advertisement under the law governing sheriff's sales, the proceeds of such sale, after paying costs and the sum of $1100.00 to plaintiffs, to be paid over to the defendant." The plaintiffs, without complaining of the verdict, excepted to the decree.

*William H. Fleming,* for plaintiffs.

*S. F. Garlington* and *Callaway & Howard,* for defendant.

ATKINSON, J. 1. The judgment allowed the defendant to set off the value of improvements placed upon the land by his grantors, as estimated at the time of the trial, without any reduction on account of profits which his grantors received from the land. It is contended that only so much of the value should be allowed as would remain after deducting profits derived from the land by the defendant's grantors, and to that extent the judgment was erroneous. For support of this contention reliance was had upon the case of *Gardner* v. *Granniss,* 57 *Ga.* 539, decided before the act of 1897 (Civil Code, §§ 5587-8), and other cases citing that case. The act made radical changes in the law on the subject of setting off improvements in cases of recovery of land in ejectment, but it is unnecessary to consider to what extent it may have modified the doctrine pronounced in the case above cited. In this case the defendant was not a privy in estate to the life-tenant. His claim of title arose under a void sale where the property was sold for taxes due by the estate of the testatrix, and was always adverse to the life-tenant. Under these circumstances, improvements placed upon the property by the defendant's predecessors in title stood upon a different footing from improvements that might have been made by the life-tenant, or by persons holding under the life-tenant. The ruling in *Smith* v. *Smith,* 133 *Ga.* 170 (65 S. E. 414), cited by plaintiffs in error, that "improvements made upon land by a life-tenant, as a general rule, pass to the remaindermen, and they can not be required to make compensation therefor," is not applicable. All improvements put upon the land by the defendant's predecessors were made during the life of the life-tenant, and at a time when the plaintiffs as remaindermen had no right of possession, and consequently no right to the profits issuing from the property. *Hawks* v. *Smith,* 141 *Ga.* 422 (4*a*), 423 (81 S. E. 200). Under these circumstances, to make the defendant account to plaintiffs for profits during the term of his predecessors by charging such profits against improvements made by defendant's predecessors would give the remaindermen profits which enured to the life-tenant, and to which the remaindermen had no right. The bar of prescription might have matured against the life-tenant, or her right to recover mesne profits might otherwise have been lost, or, if not, the right to them might be in her estate. The remaindermen could recover the profits only on the strength of their

own right to them, and not in the right of another; consequently they could not recover such profits indirectly, as by set-off against the improvements which enured to the defendant by virtue of his purchase from his predecessors who· had erected them under a claim of title which was hostile both to the life-tenant and the remaindermen. It was declared in the act of 1897 (Acts 1897, p. 79; Civil Code, § 5587): "In all cases where an action has been brought for the recovery of land, the defendant who has bona fide possession of such land under adverse claim of title may set off the value of all permanent improvements bona fide placed thereon by himself or other bona fide claimants under whom he claims; and in case the legal title to the land is found to be in the plaintiff, if the value of such improvements at the time of the trial exceeds the mesne profits, the jury may render a verdict in favor of the plaintiff for the land and in favor of the defendant for the amount of the excess of the value of the improvements over the mesne profits." Prior to the passage of this act, improvements could only be set off against mesne profits. *Dudley* v. *Johnson,* 102 *Ga.* 1 (29 S. E. 50). But the act changed the law, and by express terms authorized the set-off of improvements when made under specified conditions, whether erected by the defendant or by his predecessors, against the land as well as against mesne profits. Under the circumstances of this case, the judgment was not erroneous in so far as it allowed the defendant to set off the value of improvements erected by his predecessors, undiminished by profits which his· predecessors had derived from the land. The case is distinguishable on its facts from *Gardner* v. *Granniss,* supra, *Mills* v. *Geer,* 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934), and *Bowman* v. *Owens,* 133 *Ga.* 49 (65 S. E. 156), in each of which cases the plaintiffs had the right to the possession during the several terms of the defendant's predecessors who made improvements, and accordingly were entitled to the profits. In *Hawks* v. *Smith,* supra, it was said: "In the case of a suit by remaindermen, where the improvements were made during the pendency of a precedent life-estate by the defendant bona fide in possession under an adverse claim of title, the value of the improvements is to be estimated at the time of the bringing of the suit, and the defendant is only required to account for mesne profits accruing subsequently to the falling in of the life-estate." The statement in this quotation, that the value of

the improvements is to be estimated "at the time of the bringing of the suit," was made by inadvertence, and should have been, as expressed in the statute (Civil Code, § 5587), "at the time of the trial." With this exception the ruling stated is accurate and applicable to the present case.

2. Another exception is to the decree in so far as it denied the plaintiffs an apportionment of mesne profits accruing after the falling in of the life-estate, on account of their ownership of the walls and framework of the building. The jury found that the land with the walls and framework of the old building would not have yielded any profits, but that the improvements placed upon the old building by the defendant's predecessors and himself had put the property in condition whereby mesne profits in stated amounts would be derived from the property as a whole. In *Dean* v. *Feely*, 69 *Ga.* 804, it was held: "A defendant in ejectment can not be compelled to pay the enhanced amount as rent in consequence of his own improvements." It is upon this principle that the defendant in error seeks to uphold the judgment of the trial court; but, when applied to the facts of the case, the ruling did not authorize the judge to exclude the plaintiffs entirely from all profits that would issue from the property after it was put into a tenantable condition. By the finding of the jury, it was the improvements that made the property valuable for rent. The improvements referred to did not consist of a structure made wholly by the defendant and his predecessors, but consisted in part of permanent walls and framework of an old building owned by the plaintiffs and in part of additions made thereto by the defendant and his predecessors, whereby the old building was converted into an improvement which became income bearing. Under the circumstances the verdict of the jury is to be construed as finding that improvements on the land owned by the plaintiffs, together with improvements added by the defendant and his predecessors, made the whole property worth a stated sum for rent. The act of 1897 (Civil Code, § 5587, supra) made provisions which were deemed requisite to do equal and exact justice between plaintiffs and defendants with regard to mesne profits and improvements where the plaintiff recovers in ejectment. *Mills* v. *Geer*, supra. While it contemplated that a defendant in specified circumstances should set off improvements erected upon the property both by himself

46

and his predecessors in title, it did.not purport to authorize him to set off improvements which he or his predecessors did not make. As to the value of the improvements like those under consideration, the status of the plaintiff and the defendant would be similar to that of tenants in common, both having contributed to the erection of the building which as a whole caused the property to become profitable; and the profits should be apportioned between them. In so far as the judge declined to apportion the mesne profits between the plaintiffs and the defendant, the decree was erroneous.

3. A portion of the decree was excepted to by the plaintiffs on the ground that it and the act of 1897, as embodied in the Civil Code, § 5588, upon which it was based, was violative of those provisions of the constitution which declare: "Protection to person and property is the paramount duty of government, and shall be impartial and complete" (Civil Code, § 6358); and "No person shall be deprived of life, liberty, or property, except by due process of law" (Civil Code, § 6359). It was argued that in so far as that part of the decree authorized the defendant to pay specified sums and thereupon acquire all rights, title, and interest the plaintiffs had in the land, it amounted to taking their property without due process of law. This portion of the act in question is as follows: "The verdict mentioned in the preceding section shall also find the value of the land itself at the time of the trial, and shall give the plaintiff the alternate right to have and recover the premises, subject to the payment to the defendant of such excess of value of improvements over mesne profits, the payment to be made by the plaintiff to the defendant within such time as may be fixed by the court in the decree; and in the event the plaintiff fails to make the payment within the time allowed in the decree, then the defendant shall have the right to pay the plaintiff the value of the land and the mesne profits that shall be found due plaintiff by the jury on the trial of the case; the payment by the defendant shall be made within such time as the court may direct by its decree. In all cases in which such set-off of improvements are sought in excess of mesne profits, the jury shall have the right to fix the time from which mesne profits shall be allowed; and upon the defendant making such payment to the plaintiff, with all court costs of the proceedings, the defendant shall then acquire and have all the rights and titles the plaintiff

had and held in and to the property in dispute; and the court may by its decree require the plaintiff to make such titles to the lands in dispute as may be necessary in the premises, or else to have the premises sold by a commissioner appointed by the court, and the proceeds of such sale divided between the plaintiff and defendant in the ratio or proportion that the said value of the land itself bears to the amount of said excess of value of improvements over the mesne profits, or else to recover the value of the land itself, together with the amount of any excess of the value of the mesne profits over and above the value of the improvements; and in case the plaintiff elects to recover the value of the land itself, together with the amount of the excess of value of mesne profits over the value of the improvements, then the fi. fa. issued upon the verdict and judgment therein entered shall be levied upon the lands and improvements, and the same shall be sold by the sheriff after due advertisement under the law governing sheriff's sales." As pointed out in the preceding division, the object of the act was to administer justice between the parties. It provided for compensating a defendant for improvements which he had bona fide and innocently erected on the land, and which the successful plaintiff would get under the technical rule of the law. The statute allowed the plaintiff to take the improvements, but required him to pay for them to the extent they may have enhanced the value of the land. To the end that he should do so, the defendant's demand was made a charge upon the property recovered. The charge is in the nature of a statutory lien. The plaintiff may pay it off voluntarily; but if he does not do so, a remedy is afforded. The remedy looks to the protection of both plaintiff and defendant, holding in view the fact that both have interests in the property in gross which can not be separated in kind. It provides for ascertainment of values by the jury selected by the parties, and allows the plaintiff in the first instance to pay off the charge and get the whole property, and, if he should fail to do so, allows the defendant to pay the ascertained value of the land without the improvements and get the whole property; and if both should respectively fail to exercise the privileges accorded to them, it provides for the sale of the property by a commissioner and an appropriation of the proceeds as the interests of the parties appear. This accords with the construction placed upon the act in *Mills* v. *Geer,* supra. In Cooley's

Constitutional Limitations (7th ed.), 553, after referring to the statute of Vermont of quite similar import, it was said: "Betterment laws, then, recognize the existence of an equitable right, and give a remedy for its enforcement where none had existed before. It is true that they make a man pay for improvements which he has not directed to be made; but this legislation presents no feature of officious interference by the government with private property. The improvements have been made by one person in good faith, and are now to be appropriated by another. The parties cannot be placed in statu quo, and the statute accomplishes justice as nearly as the circumstances of the case will admit, when it compels the owner of the land, who, if he declines to sell, must necessarily appropriate the betterments made by another, to pay the value to the person at whose expense they have been made. The case is peculiar; but a statute can not be void as an unconstitutional interference with private property which adjusts the equities of the parties as nearly as possible according to natural justice." Under a proper construction, the provisions of the "improvement act" of this State, set forth in the Civil Code, § 5588, are not violative of the clauses of the constitution above quoted.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent, and George, J., who dissents from the rulings in the first and third divisions of the decision.*