TENNESSEE, ALABAMA & GEORGIA RAILWAY CO. *v.*
ZUGAR.

No. 13921.    JANUARY 14, 1942.    REHEARING DENIED FEBRUARY 12, 1942.

*Shaw & Shaw* and *Rosser & Rosser,* for plaintiff in error.
*Maddox & Griffin,* contra.

JENKINS, Justice. The rulings by this court in *Richards* v. *Edwardy,* 138 *Ga.* 690 (4), 703 (76 S. E. 64), and *Walton* v. *Sikes,* 165 *Ga.* 422, 427 (141 S. E. 188), are not in conflict with the principles announced in the cases cited in division 3 of the syllabus, or with the principles herein announced. The two cases mentioned do not deal with the respective measures of damages against wilful and innocent trespassers. They deal with the right of defendants in ejectment to set off the value of permanent improvements. The Code, § 33-107, provides: *"Bona fide holder may set off the value of permanent improvements; verdict.*—In all actions for the recovery of land, the defendant who has bona fide possession of such land under adverse claim of title may set off the value of all permanent improvements bona fide placed thereon by himself or other bona fide claimants under whom he claims; and in case the legal title to the land is found to be in the plaintiff, if the value of such improvements at the time of the trial exceeds the mesne profits, the jury may render a verdict in favor of the plaintiff for the land and in favor of the defendant for the amount of the excess of the value of the improvements over the mesne profits. (Acts 1897, p. 79.)" This statute, while in conformity with what had become recognized equitable principles (*Dudley* v. *Johnson,* 102 *Ga.* 1, 29 S. E. 50; *Harper* v. *Durden,* 177 *Ga.* 216, 170 S. E. 45; *Graham* v. *Lanier,* 179 *Ga.* 744, 746, 177 S. E. 574), is nevertheless contrary to the early common-law rule (18 Am. Jur. 124, § 159) ; and by the terms of the statute, the right to an equitable set-off was greatly enlarged and extended. *Mills* v. *Geer,* 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934). Accordingly, the use in the statute of the words "permanent improvements bona fide placed thereon" must be given its strict rather than a liberal and general interpretation. In the *Richards* case it was held that "In order to entitle the defendant

in an ejectment suit, claiming to be a bona fide holder, to the provisions in his favor contained in the Code section just quoted, he must show that he is not only a bona fide holder, but that the improvements upon the property have been 'bona fide placed thereon;'" and that since at the time the improvements were made the defendant had already received "full notice of the defects in his title and complete notice of the rights of this plaintiff" by the filing of the ejectment suit, he could not be heard to say that the improvements had been "bona fide placed" on the premises. The words "bona fide" as used in the sense of a bona fide holder, or bona fide purchaser, carry as their technical, primary connotation the absence of notice or knowledge of an outstanding adverse claim. 5 Words & Phrases, 628, 631, 636, and cit. In those cases where the words "bona fide holder" and improvements "bona fide placed" are thus used in their primary, technical, and limited sense, one can not be a bona fide holder of land unless he be ignorant of the definite adverse claim of another; and this is true, however reasonable his own claim of title may be, and however honestly it may be asserted in the erection of the improvements. Since the statute formulating and enlarging the right to set off permanent improvements must be taken as using the words "bona fide placed thereon" in their primary technical sense, clear and definite notice of an adverse claim, as by a suit in ejectment (as distinguished from imperfect notice, as in *Moate* v. *Rives,* 146 *Ga.* 425 (3), 429, 91 S. E. 420), will nullify the right of the holder to claim that the improvements were bona fide erected. In the *Richards* case the court appears to have had in mind the technical distinction we have outlined, since it was careful not to entrench upon the well-settled general principle as to what constitutes bona fide possession, by pointing out that "not only" must the possession be bona fide, but the improvements must be "bona fide placed thereon." That mere notice or knowledge of an adverse claim does not destroy the bona fide character of a reasonable and honest claim by one in possession is unquestionable. In *Lee* v. *Ogden,* 83 *Ga.* 325, 329 (10 S. E. 349), this court said: "When the doctrine of prescription is involved in a suit in ejectment, good faith is one of the main elements in the case; and as we have uniformly held, mere notice of an outstanding title is not evidence of bad faith. Good faith is not inconsistent with such notice." See also *Latham* v. *Fowler,* 192 *Ga.* 686, 692 (16 S. E. 2d, 591), and cit. If, then, it

be true that notice of an adverse claim is not inconsistent with the good faith of a holder of land, it would seem, a fortiori, that one holding in good faith would not be guilty of a *wilful trespass* in exercising the rights of ownership. A wilful trespass has been characterized as a wanton trespass and as one made in bad faith. *Georgia Railroad & Banking Co.* v. *Gardner,* 115 *Ga.* 954 (42 S. E. 250); *Southern Ry. Co.* v. *O'Bryan,* 119 *Ga.* 147 (45 S. E. 1000); *Investment Securities Corporation* v. *Cole,* 186 *Ga.* 809, 810 (199 S. E. 126), and cit.; 45 Words and Phrases, 331, and cit. This could not be true if the premises were honestly claimed in good faith.

In the very able opinion of the Court of Appeals, now under review, certain decisions of foreign jurisdictions are cited and quoted from, which seem to fully sustain the majority view. These cases appear to hold, in effect, that after notice of a doubtful but valid adverse claim has been had by the holder in possession, his possession can no longer be accounted as bona fide, however reasonable his own assertion of title might be, and however honestly asserted; that in order to be in good faith one must also be right; that acts thus committed under an error of judgment, however reasonably, honestly, and innocently done, amount always to a wilful trespass committed in bad faith. If this be the correct rule, what, it might be inquired, can the statute mean when it speaks of an "innocent trespasser"? Code, § 105-2013(2). To be a trespasser, one must be in the wrong; and if being wrong, however innocently, means bad faith and a wilful disregard of the rights of another, it does not seem that § 105-2013 could serve any purpose at all in prescribing different measures of damages as between wilful and innocent trespassers. The application of legal maxims, such as that every one is presumed to know the law, can easily be overextended. While it is true enough that a trespasser who has innocently misjudged the strength of his own title can not exculpate himself from the penalty of the actual damages merely because he thought he was right when he was in fact wrong, the maxim does not say or suggest that if one misjudges the law he necessarily does so wilfully and in bad faith, and should be mulcted in punitive damages as for wilful misconduct.          *Judgment reversed. All the Justices concur.*