## 30881. DAVIS *v.* PRICE.

DECIDED JUNE 14, 1945.

*Charles Pittard, Alton G. Liles,* for plaintiff in error.
*W. L. Nix, D. B. Phillips,* contra.

SUTTON, P. J. (After stating the foregoing facts.) ■ It appears from the evidence that the plaintiff and the defendant were

adjoining land owners, and that the tract of land from which the timber in question was cut consisted of four or five acres. The plaintiff acquired his land, consisting of a tract of thirty-seven acres, more or less, from his father, G. L. Price, who inherited it from his father, W. D. Price, and W. D. Price purchased it about thirty years before the trial of this case. The plaintiff contended that the true line between his land and that of the defendant was designated on a plat which he introduced in evidence, and that the tract of four or five acres in dispute was his property, and that he and his predecessors in title had been in possession of the land since his grandfather, W. D. Price, bought it some thirty years ago. He introduced testimony tending to support his contention as to the correct dividing line between the lands of the parties hereto and that the land in dispute was his property.

It appears that W. R. Davis had owned his land for about twenty-seven years, and he contended that immediately after he bought the same he and W. D. Price, the grandfather and predecessor in title of the plaintiff, together with G. L. Veal, the county surveyor of Gwinnett County agreed upon and established the dividing line between their lands, that they agreed to and marked the line between the lands of the plaintiff and the defendant some twenty-six years ago, and that the land in dispute belonged to the defendant. He introduced evidence tending to support his contentions as to the true dividing line and that he was the owner of the land in dispute.

The evidence was in conflict as to the true dividing line between the plaintiff and the defendant as adjoining land owners and probably would have authorized a finding in favor of either party on the issue as to the ownership of the four or five acres of land in dispute. But the verdict for the plaintiff for $550 as damages for the timber cut was not authorized by the evidence. Among other things, the plaintiff testified as follows: "I am twenty-seven years old. . . I have lived on this place all of my life, and Mr. Davis has owned the adjoining lands all of my life. I don't know anything about my grandfather and Mr. Davis meeting down there on that line and agreeing on the line. When this timber was cut off this land that is in dispute I was working for Mr. Hamner. [Hamner was the party who bought the timber from Davis.] I helped cut the timber off of it. I cut about a day on the land

that I now say is in dispute. This particular spot where the timber is, is the land that I say has been in dispute for twenty-seven years. . . I cut logs down there on this disputed land for almost a day. I don't know how many logs we cut. I did not help cut all of them. I just cut part of the day. I don't know how many people were cutting. I guess there were six or eight people cutting. We cut the timber off of somewhere about four or five acres of land, that's about the amount of land that is between where I say where the line is and where Mr. Davis claims it to be." G. L. Price, father of the plaintiff, testified that he saw where the timber was cut but he did not know how much was cut.

W. H. Maltbie testified for the plaintiff that someone carried him to the land where Mr. Davis had cut the timber and he counted 110 stumps of trees that had been cut on the land in dispute, that the trees had been cut some two years before he made the count and a few logs were left on the ground; and he estimated from the stumps and having seen the timber before it was cut that there was 25,000 or 30,000 feet of lumber, but testified that he did not see any of the timber cut and did not know what shape it was in; that he was not familiar with the value of the manufactured products, but that he thought one third of it would have manufactured No. 1 grade lumber, one third, No. 2, and one third, No. 3; that 10,000 feet No. 1 would have brought $75 or $80 per thousand, 10,000 feet, No. 2, $60 or $65, and No. 3 grade, about $40 or $45. He testified that he knew the place, but did not know anything about the lines.

J. C. Hamner testified for the defendant that he bought the lumber on the W. R. Davis land adjoining the Price land, that he had been over the four or five acres of land that is now in dispute between these parties, and would estimate that he cut between 3500 and 4000 feet of lumber on the tract of land now in question; that it was sorry old oak that grows on ridge land, and its value on the stump at that time was $3.50 per thousand, and oak lumber was selling for around $15 to $20 per thousand feet.

Wright Bland testified that he operated a sawmill and cut the timber that J. C. Hamner purchased from W. R. Davis; that he was familiar with the small tract of land now in dispute between J. C. Price and W. R. Davis and that he cut the timber off of that land, and in his opinion there could not have been over 4000 feet

of lumber on that tract; that J. C. Price was working for him and was present and helped cut all of the timber on the disputed land; that he had about six men cutting and it did not take long to cut it.

As above stated, the plaintiff's suit was for damages for a wilful trespass on the part of the defendant for cutting and removing timber, and the evidence shows that the plaintiff cut or assisted in cutting most of the timber that was cut from the four or five-acre tract of land in dispute between the parties. It is true that the plaintiff testified that some of the timber was cut after he quit cutting and had notified the defendant or his agents to stop cutting, but there is no possible way for the jury or anyone else to determine from the evidence how much of the timber was cut while the plaintiff was present and engaged in cutting or helping to cut the same, or how much, if any, was cut the next day after he quit cutting. J. C. Hamner, the party who bought the timber from Davis, and Wright Bland, the man who sawed it, testified that there was not over 4000 feet of the timber cut on the land now in dispute, and that the value of the timber on the stump was $3.50 per thousand, and that when sawed into lumber it was worth from $15 to $20 per thousand. 4000 feet at $3.50 per thousand would amount to only $14, and 4000 feet at $20 per thousand would amount to $80. The only other witness who testified with respect to the quantity or value of the timber was W. H. Maltbie. He did not see any of the timber cut, did not know who cut it, did not know where the lines were, but someone carried him to the place about two years after the timber was cut and he counted 110 stumps, though he did not see the timber and did not know what shape it was in, but estimated from the stumps and having seen the timber sometime before it was cut that there was 25 or 30 thousand feet of lumber; that he was not familiar with the manufactured products, but thought one third of it would have made 10,000 feet of No. 1 grade lumber and would have brought $75 or $80 per thousand, and one third would have made 10,000 feet of No. 2 lumber worth $60 or $65 per thousand, and the No. 3 grade, about $40 or $45 per thousand. The testimony of this witness related to all of the timber that he thought might have been cut on the land in question, in fact, it covered more stumps than the number of trees set out in the plaintiff's petition, and in passing on the sufficiency of his testimony we must take into

consideration that the undisputed evidence shows that the plaintiff cut or helped to cut most of the timber on the tract of land in dispute, and that he did so knowing at the time where he claimed the dividing line to be and where Davis claimed it was. Certainly, the plaintiff can not recover damages against the defendant for a wilful trespass for trees that he cut or helped to cut himself. Under the most favorable view of the evidence for the plaintiff, only a small portion of the trees were cut on the land in dispute after the plaintiff stopped cutting and notified the defendant not to cut any more, and just how much or what per cent. can not be determined from the evidence. If the defendant was an innocent trespasser, that is, thought the land in question was his property and in good faith had the timber on it cut, the plaintiff could only recover for the actual damages, that is, for the value of the trees at the time they were cut; provided, it later developed that the land from which the trees were cut really belonged to the plaintiff. If the timber cut from the land in dispute did not amount to more than 4000 feet, as testified to by Hamner, the man who bought the timber, and by Bland, the man who sawed it into lumber, and the stumpage value of it was $3.50, as shown by the evidence, then the value of the timber at the time it was cut would amount to only $14. If the timber cut would have made 30,000 feet of lumber, the highest estimate placed on it by the witness Maltbie, who made his estimate from the number of stumps he counted and from having seen the timber in that location some time before the timber in question was cut, then at $3.50 per thousand, the stumpage value of the timber at the time it was cut according to the evidence, it would have amounted to only $105. Under no view of the record as here presented could a verdict have been lawfully rendered for the plaintiff for more than $105. The Code, § 105-2013, provides: "Where plaintiff recovers for timber cut and carried away, the measure of damage is: 1. Where defendant is a wilful trespasser, the full value of the property at the time and place of demand or suit, without deduction for his labor or expense. 2. Where defendant is an unintentional or innocent trespasser, or innocent purchaser from such trespasser, the value at the time of conversion, less the value he or his vendor added to the property." In this connection see, *Tennessee, Alabama & Georgia Ry. Co.* v. *Zugar*, 193 *Ga.* 386 (3) (18 S. E.

2d, 758). The verdict in favor of the plaintiff for $550 was not authorized by the evidence, and the court erred in overruling the motion for new trial on the general grounds.

■ The charge complained of in special ground 2 of the motion with respect to recovering damages for a wilful trespass was error for the reason it was not adjusted to the evidence.

■ We think the charge complained of in special ground 1 of the motion was merely an inapt expression on the part of the court and will not occur on another trial of the case.

Judgment reversed. Felton and Parker, JJ., concur.