## SEWELL *v.* NORRIS *et al.*

1. If two parties confederate for the purpose of defrauding the creditors of one of them, and in pursuance thereof the debtor executes and delivers a deed conveying land to the other, neither law nor equity will help him to cancel such deed or to avoid its effect by showing that it was fraudulent.

2. If the parties make a contract for the purpose of defrauding a creditor or creditors of one of them, such contract, while executory, can not be enforced by either against the other.

3. If one who held the legal title to land, though unrecorded, represented that the title was in another person who appeared from the record to be the owner, and that such other person had the right to sell and make a bond for title to the land, and thus induced an innocent purchaser for value, in reliance on such representation, to accept a bond for title from the other person, to give notes for the purchase-money, and to pay some or all of them, the person so acting would be estopped from denying the title of such third person.

4. But if the whole agreement of sale was fraudulent and a mere sham to defeat creditors of the real owner, whose deed was unrecorded, and the taker of the bond participated in such scheme and knew the real facts, no equitable estoppel would arise in his favor so as to prevent the holder of the legal title from asserting it, if he could do so without relying on or taking advantage of the fraudulent transaction.

5. If the owner had a legal title untainted by the fraud, his right to recover possession on it against the holder of the bond for title from the third person would not be defeated, if his case did not involve the setting up of the fraud, but the defense was compelled to set up the fraudulent transaction for the purpose of establishing an equitable estoppel or affirmative equitable rights.

Submitted April 18,—Decided August 9, 1907.

Complaint for land.   Before Judge Brand.   Walton superior court.   July 12, 1906.

J. R. P. Sewell brought an action of complaint against J. R. Grubbs and J. O. Norris, seeking to recover a tract of land containing forty-two and a half acres. The defendants denied that the plaintiff was the owner of the land; and Norris alleged that he was the lawful owner and in legally acquired possession. He also pleaded that he bought the property from Mrs. E. J. Sewell, receiv-

ing a bond for title from her; that at the time of the purchase the plaintiff represented that the title was in her, and assisted in conducting the sale; that he induced this defendant to accept the bond, and also wrote the notes given for the purchase-money, four of which have been paid; and that he was thereby estopped from claiming title.

The plaintiff conveyed the land to his mother, Mrs. E. J. Sewell, by a deed dated May 6, 1893, and she reconveyed it to him by deed dated May 15th, of the same year. She made to G. L. King a bond for title dated August 24, 1898, and this was transferred by King to Norris on April 12, 1902. The defendants sought to show that Sewell negotiated the trade with King, and stated that the title was in his mother because he owed her some money; that upon his representation King accepted a bond for title from Mrs. Sewell, the mother, and gave notes which had been paid off; that he was in possession; that the trade was made in good faith on his part; and that the bond was transferred to Norris, who also took in good faith. The evidence on behalf of the defendants themselves, however, indicated that they knew that Sewell had separated from his wife and was hid in a little tenant's house; that King and Norris knew that he was in trouble and wanted to sell his land, and was thus dealing with the land in controversy, although the title was in his mother. The evidence for the plaintiff tended to show that the whole transaction with King and Norris was a fraud and merely colorable; that they knew the title was in the plaintiff, though his deed was unrecorded; that Sewell had separated from his wife, and, to avoid a claim for alimony or some similar claim, the bond for title from his mother to King was executed, and the purchase-money notes made, though it was understood that they were never to be paid, and that all the parties participated in this. The plaintiff denied that he ever received any payment of the notes. The brother of the plaintiff testified that on behalf of his mother he tendered back to King the amount which had been paid on the notes, and that the latter refused it.

The jury found for the defendants. The plaintiff moved for a new trial, on the general grounds, and also on certain grounds which were added by amendment. One of these complains of the following charge of the court; "If you believe from the evidence in the case that the alleged sale of the property in controversy, and the

alleged purchase of the same by King, was a fraudulent purchase and sale, and that the bond for titles and notes given pursuant to said sale were a part thereof and were fraudulently executed and delivered by the respective parties; that is to say that if you believe all this was done to defraud any creditor of the plaintiff, and that the defendant King and Norris were parties to this fraudulent scheme, and that the whole thing was a fraud and known to all the parties thereto, then all the parties are bound by their fraudulent conduct, and the law will leave them where it finds them. Courts will not lend their aid to relieve any one from the consequence of his own fraudulent conduct. This rule of law applies to executed contracts, and not to contracts that are executory in their nature. Whether it is an executed contract or an executory contract is a question which the jury will decide from the evidence in the case." It was alleged that this was error, because the court should have charged that the contract referred to was an executory contract, that the law found Sewell with the legal title, which would authorize a recovery unless he had lost the right, and that his right to recover on his legal title would not be defeated by showing a subsequent fraudulent contract resulting in the giving of a bond for title and possession by the defendant; and that the court in a previous part of the charge, in stating the contentions of the defendants, told the jury that they contended that the law found them in possession, and the law would leave them where it found them, and that, taking this in connection with the charge quoted, it was calculated to confuse the jury as to where the parties were found by the law, in the legal sense of that expression. The judge declined to certify two grounds of the motion, but certified that he did not charge that notwithstanding there might have been a fraudulent scheme on the part of the parties to the litigation, to defeat the collection of a debt against the plaintiff, and the bond and notes were given in pursuance of the scheme, the plaintiff was entitled to recover, unless it was necessary to invoke the aid of the fraud to make out his case. The motion was overruled, and plaintiff excepted.

*Skelton & Swilling* and *J. N. Worley,* for plaintiff.

*J. B. Jones* and *W. R. Little,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

It is to be regretted that parties should bring such a transaction as is here involved before the courts. That Sewell was endeavoring

to avoid some legal liability appears beyond question. If King and Norris were innocent purchasers for value, and without notice, they would be protected. If they were participants in the fraudulent effort of Sewell to conceal his property, and were in pari delicto with him, they would stand no better in such transaction than he does. Where parties are equally at fault, neither law nor equity will help either of them to enforce a contract the object of which was to defraud others, if executory, or to set it aside, if executed. The rule is often expressed by saying that in such cases the law "will leave the parties where it finds them." Civil Code, §3937. In Bump on Fraudulent Conveyances (4th ed.), 445, it is tersely and forcibly said that "there is no obligation upon any one to extricate a rogue from his own toils. On any other principle a knave might gain, but could not lose, by a dishonest expedient, and inducements would be furnished to unfair dealing, if the law were to repair the accidents of an unsuccessful trick. A fraudulent grantee, therefore, is allowed to retain the property, not for any merit of his own, but for the demerit of his confederate, in accordance with a wise and liberal policy, which requires that the consequence of a fraudulent experiment shall be made as disastrous as possible. The law endeavors to environ a debtor with all possible perils, and make it appear that honesty is the best policy." *Fouché* v. *Brower*, 74 *Ga.* 251, 267.

Legally speaking where does the law find the parties to this case? It finds the plaintiff with the legal title to the property in him, placed there several years before the transaction with the defendants, and apparently having no connection with the fraud or the dealing with them. If the maxim "ex dolo malo non oritur actio" (from fraud no cause of action arises), or the other like maxim, "ex turpi causa non oritur actio" (from a base transaction a cause of action does not arise), be applied to this case, it does not appear that the legal title in the plaintiff was tainted with the fraud which the evidence indicates entered into the subsequent agreement between him and the defendants. He did not have to invoke the unlawful agreement or transaction in order to assert that title. Thus, then, so far at least as this record discloses, the law found him with a legal title on which he could recover without resort to or reliance upon any illegal agreement, unless he were prevented from recovering by some legal defense. Under the doctrine expressed in the

maxim, "ex turpi causa non oritur actio," it has been said that no court will "allow itself to be made the instrument of enforcing obligations alleged to arise out of a contract or transaction which is illegal." Scott *v.* Brown, 2 Q. B. Div. 724, 728. Lindley, L. J., said: "Under the circumstances, the plaintiff must look elsewhere than to a court of justice for such assistance as he may require against the persons he employed to assist him in his fraud, if the claim to such assistance is based on his illegal contract. Any rights which he may have irrespective of his illegal contract will, of course, be recognized and enforced. But his illegal contract confers no rights on him." In Simpson *v.* Bloss, 7 Taunt. 246 (17 Rev. Rep. 509), it was said that "The test whether a demand connected with an illegal transaction is capable of being enforced at law is whether the plaintiff requires any aid from the illegal transaction to establish his case." In *Ingram* v. *Mitchell,* 30 *Ga.* 547, it was said, that whenever the plaintiff can make out his case without invoking the illegal contract to his aid, he is entitled to recover. And see *Clarke* v. *Brown,* 77 *Ga.* 606; *Howell* v. *Fountain,* 3 *Ga.* 182; *Adams* v. *Barrett,* 5 *Ga.* 404; *Garrison* v. *Burns,* 98 *Ga.* 762. But Lord Mansfield said, "If, from the plaintiff's own statement or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, then the court says he has no right to be assisted." Holman *v.* Johnson, Cowp. 343. *Holleman* v. *Bradley Fertilizer Co.,* 106 *Ga.* 156; *Tompkins* v. *Compton,* 93 *Ga.* 520. The illegality of a contract which is sought to be enforced, or in respect to which relief is prayed, may appear from the plaintiff's case or may be set up by way of defense. *Bugg* v. *Towner,* 41 *Ga.* 315. The deed on which it was attempted to recover possession in that case was void under a statute of this State.

Where money is paid or personal property is delivered under such a fraudulent or illegal contract, nothing more is necessary to pass title thereto. The contract is executed, and there can be no recovery of such money or property if the parties are in pari delicto. In regard to real estate, the mere allowing a person to take possession, or even placing him in possession, does not convey title or operate as a complete execution of a contract to make a title. A conveyance of real estate or of an interest therein must be in writing. A contract of sale in parol with full payment of the purchase-money and delivery of possession may take the sale without the

provisions of the statute of frauds. But, as already noted, the writ-- ten contract here was not between the owner and the person who took possession, but between such person and a third party, and as against the owner it was necessary to invoke the doctrine of equitable estoppel.

Where did the law find the defendants? They were in posses-- sion, or one of them was so. But they had no title, and possession alone would not defeat a recovery under a superior legal title. Something else must be shown. "If the owner or a person having an interest in property represents another as the owner, or permits him to appear as such, or as having complete authority over it, he will be estopped to deny such ownership or authority, against persons who, relying on his representations or silence, have purchased or acquired an interest in the property; and generally where a person by word or conduct voluntarily induces another to act on a belief in the existence of a certain state of facts, he will be estopped, as against him, to allege a different state of facts." *Equitable Mortgage Co.* v. *Butler,* 105 *Ga.* 555, 560. In order to be benefited by this rule, the purchaser must have relied on the representations or conduct of the person sought to be estopped. He must have been induced to act on the belief in the existence of a state of facts, by reason of the representations or conduct of the other party. He must have acted in ignorance that the state of facts on which he claimed to rely was not the true state, and the purchase must have been a bona fide purchase, not a mere sham to avoid creditors, participated in by both parties. If the transaction was merely a trick or device to defeat a creditor or creditors of Sewell, and King and Norris knowingly took part in it, no equity could arise in their favor by reason of it. The law declares it to be wrong to seek to defraud creditors; and if parties combine together to commit such a wrong, no equity will arise in favor of either against the other; nor will an equitable estoppel arise in favor of one of such parties as against the other from such a transaction. *Deen* v. *Williams,* ante, 265. The bond for title was not made by Sewell, but by his mother. Whatever money was paid on the trade was not paid to him, but to her. The plaintiff does not rely upon this transaction either to recover the land or to set aside any contract of his. The defendants have not title, and must set up the transaction, whatever it was, in support of their claim. This be--

ing so, if the thing on which they must rely for some affirmative right is in law contrary to public policy and good morals, their claim must fall. In cases where parties conspire together to defeat creditors of one of them, if they subsequently fall out among themselves, the law will not enforce the contract between them, if it is executory, and will not set it aside if it is executed. Whichever party has to resort to setting up the illegal transaction, in order to establish or support an affirmative claim or right, must lose. If the debtor has made and delivered a deed conveying property, he can get no aid to set aside such a deed because of his own fraud. The deed becomes an executed contract, and places the title in his grantee; and if the grantee sues him for possession of the land so conveyed, neither law nor equity will help the grantor to defeat a recovery by setting up that the transaction was entered into in order to defraud his creditors; and, on the other hand, if one holds the legal title not affected by the fraudulent transaction, if there was one, and brings suit to recover the land from the possession of another who has no title, the latter can not defend successfully by setting up that he is without legal title, but that he was placed in possession under a contract or arrangement to defeat the creditors of the owner. This would be in effect to enforce a contract or agreement which the law declares fraudulent and contrary to public policy. It would be equivalent to setting aside the legal title, or granting specific performance in favor of the holder of the bond for title, under a fraudulent agreement, or of recognizing equities as growing out of such transactions.

We do not know what facts may be developed on the trial,—whether it may appear that the purchasers were bona fide and without notice of any wrongful purpose in the transaction, or whether they were participants in an effort to defeat a creditor or creditors of Sewell. But we do not think that our excellent brother of the circuit bench clearly placed before the jury the doctrine of executed and executory contracts, and the question whether the plaintiff had a legal title unaffected by the fraud involved in the transaction, if there was any; and if there was such a fraudulent transaction in which both parties participated, whether the defendant Norris had title outside of it, or must invoke the fraudulent transaction to establish some affirmative right or equity on his part.

See *Parrott* v. *Baker,* 82 *Ga.* 364, where the case of *Harrison* v. *Hatcher,* 44 *Ga.* 638, decided by two Judges, was overruled; *Beard* v. *White,* 120 *Ga.* 1018.

           *Judgment reversed. All the Justices concur.*