HARPER *et al.* v. DURDEN.

No. 9520. JUNE 15, 1933.

*W. T. Burkhalter* and *Lankford & Rogers,* for plaintiffs.

*Dykes & Dykes, G. C. Webb,* and *B. P. Jackson,* for defendant.

GILBERT, J. By deed dated January 1, 1875, Timothy Carter conveyed described land to James Tillman in trust for the sole and separate use of Rhoda Carter, wife of Timothy Carter, "for and during her natural life and after her death to such children as she may leave living at the time of her death, having been begotten by said Timothy Carter, share and share alike." Rhoda Carter died during the month of December, 1929. Lizzie Harper and four others, alleged to be all the children of Rhoda Carter, together with W. T. Burkhalter, brought, to the February term, 1930, of Toombs superior court, an action of ejectment against F. M. Durden, for the recovery of the land and mesne profits. Burkhalter's interest in the land is based upon a deed from the children of Rhoda Carter, conveying a one-third interest. The court directed a verdict for the plaintiffs for the premises in dispute, and submitted the question of setting off improvements. The jury returned a verdict for $150 rent, and "that the defendant in good faith made valuable improvements on the premises in dispute, while holding adverse possession of the land under a claim of right." The value of the land, without improvements at the time of the trial, was found by the jury to have been $600, and they found the value of improvements made by the defendant to have been $900. Decree was entered, providing that upon payment of $750 by plaintiffs to defendants, within 30 days, title and right of possession should be in them; that upon their failure to make this payment the defendant, upon payment within 30 days of $750 to the plaintiffs, should have the title and right of possession.

Durden introduced in evidence a deed from Rhoda Carter, dated November 7, 1878, purporting to convey the land in dispute to Jas. H. Smith; also a deed from R. N. Adamson, sheriff of Tattnall County, purporting to convey the land in dispute to James H. Smith, and reciting that it was made under an execution levied upon the land "as the property of Dock Bacon." He also introduced successive conveyances from J. H. Smith down to a quitclaim deed dated April 1, 1909, placing the title in J. C. Banks, who conveyed it by quitclaim dated November 6, 1909, to Durden. The evidence for Durden showed that Banks was in possession of the land at the time of the sale to Durden.

The plaintiffs moved for a new trial, and they assign error upon the overruling of that motion. Of the special grounds of the motion the first complains that the court charged that the defendant might set up that he had "in good faith . . made valuable improvements upon the premises at a time when he was holding adverse possession under a claim of right, and the law is that if such improvements were equal to or of less amount than the rents and profits that the plaintiffs are entitled to recover, he may set off such valuable permanent improvements as against such rents and profits." The defendant testified: "As to whether or not the colored woman that was in here—Lizzie Thomas or Lizzie Harper [one of the plaintiffs]—about the time I was bargaining for this land, or about the time I bought it, as to whether she and her sister went to me and told me that this land belonged to their mother, and when she died the property now in dispute would belong to her children, or words to that effect,—they came through there, and I didn't know whether it was her or not, after I had done bought and paid for the property, and said that the land belonged to Rhoda Carter's heirs, or some way or another, and I had better mind what I was doing. And I says that I have done bought it now. But I had not made any improvements on it at that time." It is contended that the charge was error, because, first, at the time the improvements were made the defendant's possession of the land was not adverse to plaintiffs and did not become so until the death, in December, 1929, of Rhoda Carter, who held a life-interest under the deed from Timothy Carter; and second, because the testimony of the defendant quoted above conclusively showed that he had actual notice of the plaintiff's rights in remainder before he made any improvements on the land.

The second ground complains that the verdict is directly contrary to the charge as given: "If you should find that Mr. Durden made permanent valuable improvements and they were not done in good faith, that he had notice, and I charge you that anything that would put a person on inquiry and direct attention is notice of all such things as such inquiry may lead to. Ignorance of a fact due to negligence is equivalent to knowledge. So in this case, if Mr. Durden had notice, knowledge under that rule of an outstanding title, and he proceeded to put valuable improvements upon the premises, then I charge you he would have no right to set them off

at all, and your verdict ought to be for the plaintiffs for the premises in dispute and whatever you may find to be the fair rental value of the premises for the year 1930." Movants contend that by the recorded chain of title, and by reason of the testimony of the defendant already quoted above, it appeared that he had both actual and constructive notice of the fact that he acquired only the life-estate of Rhoda Carter, and that at her death the remainder would vest absolutely in her living children; and therefore that the only verdict which could properly have been returned, under the charge as given, would have been one in favor of plaintiffs for the land and the rental value for 1930.

The third ground complains of the admission in evidence of the deed from Rhoda Carter to James H. Smith, containing the following: "for and in consideration of fifty dollars in hand paid, and the further consideration that all lawsuits whether civil or criminal, now pending between Tim Carter and Jas. H. Smith, and Rhoda Carter and Jas. H. Smith, or Daniel Bird and Tim Carter, all of said county, shall be now settled and forever stopped, has granted, bargained, sold, and conveyed unto the said Jas. H. Smith," over objection that the consideration expressed in the deed made it void, and no title passed.

The fourth ground complains of the admission of a deed made by R. N. Adamson, sheriff, to James H. Smith, conveying the premises in dispute, which states that the execution upon which it was based was "issued from the justice's court 43rd dist. G. M., of Tattnall County in favor of J. H. Smith against Linton and Dock Bacon, which the sheriff levied on the 30th day of Aug., 1889, on fifty acres of land as the property of Dock Bacon," over objection that the deed was not accompanied by the execution, and it did not appear that Dock Bacon ever had any title to the land; and if he did, it was junior to the title of the plaintiffs.

■ The first special ground of the motion complains that the court gave in charge to the jury the substance of the provisions of the Civil Code (1910), § 5587, which is a codification of the act of 1897 (Ga. Laws 1897, p. 79), as follows: "Now then, even though a party bringing a suit in ejectment, the plaintiffs may show an outstanding paramount legal title to the premises, and therefore entitled to recover, yet the defendant in such a suit may set up that in good faith that he made valuable improvements upon the prem-

ises at a time when he was holding adverse possession under a claim of right; and the law is that if such improvements were equal to or of less amount than the rents and profits that the plaintiffs are entitled to recover, he may set off such valuable permanent improvements as against such rents and profits. He may go further than that; and the law is that if the plaintiffs are entitled to recover the premises, and if the jury finds rents and profits for the plaintiffs, if the valuable, permanent improvements placed upon the premises in good faith by the defendant holding adverse possession under a claim of right, if the value of such improvements exceed the rents and profits that the plaintiffs are entitled to recover, then the law is that the jury shall fix, by your verdict, the value of the premises in dispute at the time of the trial, the rents and profits, if any, that the plaintiffs are entitled to recover, and then the value of the improvements placed upon the premises by the defendants while in adverse possession under a fair claim of right." This raises what we deem the chief question involved in the present controversy. It is contended that under the law and evidence that issue should not have been submitted at all, since the jury could only return a verdict on that question adverse to the defendant. There are a number of subsidiary questions involved in the main question. All of these questions must be considered in the light of basic principles which will first be stated. In *Willingham* v. *Long,* 47 *Ga.* 540, 545-6, decided long prior to the act of 1897, this court said: "The plea of improvements as an offset to rents is an equitable defense, and should be regulated by the principles of justice and equity." It is based upon the familiar maxim that one who seeks equity must do equity. "Even prior to the modified common-law rule it was the rule under the civil law, upon the broad principle of equity, that no one ought to enrich himself at the expense of another, that, where one made permanent improvements on land in his possession under a bona fide belief of ownership, he was entitled to full compensation therefor, less a fair compensation for rents and profits during the period of his occupancy, before the owner of the property could recover the same." 31 C. J. 313, § 15. Even a trespasser is not wholly denied set-off, where he has made permanent improvements and the value of the premises has been increased by the repairs or improvements. Civil Code (1910), § 5671. Chief Justice Warner, in *McPhee* v. *Guthrie,* 51 *Ga.* 83, 89, said of the

equity in favor of a trespasser: "But this is not a new principle introduced into our Code; it was a principle recognized by courts of equity in England long anterior to 1776. . . Equity, as defined by Grotius, and recognized by Blackstone, is the correction of that wherein the law, by reason of its universality, is deficient. Equity jurisdiction is established and allowed in this State for the protection and relief of parties, where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong, or relieving for injuries done. Code, § 3081" (1910, § 4519). See also *Dean* v. *Feely,* 69 *Ga.* 804, 820.

It is insisted that the evidence of the defendant Durden itself concludes the question adversely to him. Counsel for the plaintiffs specifically point out the following evidence of Durden, as a basis for that contention: "As to whether or not the colored woman that was in here—Lizzie Thomas or Lizzie Harper—about the time I was bargaining for this land, or about the time I bought it, as to whether she and her sister went to me and told me that this land belonged to their mother, and when she died the property now in dispute would belong to her children, or words to that affect, —they came through there, and I didn't know whether it was her or not, after I had done bought and paid for the property, and said that the land belonged to Rhoda Carter's heirs, or some way or another, and I had better mind what I was doing. And I says that I have done bought it now. But I had not made any improvements on it at that time." This contention is not sound. The payment of a valuable consideration raises the presumption of good faith. In *Williams* v. *Smith,* 128 *Ga.* 306, 310 (57 S. E. 801), which was a complaint for land and in which there was no question of recovery for permanent improvements, this court said: "Proof of such payment, in the absence of proof of notice, or of any fact sufficient in law to charge notice, or sufficient to put the purchaser upon inquiry, will raise the presumption that his purchase was without notice, and the onus will be upon the one asserting the equity in the property to prove notice thereof to such purchaser. See, in this connection, *Johnston* v. *Neal,* 67 *Ga.* 528, where it is said: 'Proof that a purchaser bought for value from the defendant in fi. fa. raises a presumption of good faith; and if it is desired to rebut this presumption by proof of actual notice of the judgment, the onus of

proving such fact is on him who asserts it.' In Barton *v*. Barton, 75 Ala. 400 (cited in 23 Am. & Eng. Enc. L. 523), it was held that 'the rule as to proof of a bona fide purchase is, that the party pleading it must first make satisfactory proof of purchase and payment, it being affirmative defensive matter, in the nature of confession and avoidance; but this done, he need not go further, and prove that he made such purchase and payment without notice. The burden here shifts; and if it be desired to avoid the effect of such purchase and payment, it must be met by counter proof that before the payment the purchaser had actual or constructive notice of the equity or lien asserted, or of some fact or circumstance which was sufficient to put him on inquiry, and which, if followed up, would have discovered the equity or incumbrance.'"

The evidence in this case is undisputed that Durden paid value for the land before the conversation with Lizzie Harper. There is no evidence that the amount paid was not full value. It will be seen, therefore, from the authority just above mentioned, that the presumption is that Durden bought the land in good faith, and the burden was shifted to the plaintiffs in the case. Nothing else appearing, the judge could not have directed any verdict on the question of permanent improvements, but was compelled to submit that issue to the jury in accordance with the terms of the Code, § 5587. "One may be the possessor of land in good faith, though aware of an opposing claim (where such knowledge would not of itself impute bad faith), if he *enters* [emphasis ours] in full confidence of his title or the title of one under whom he *immediately* claims; but his knowledge of an opposing claim of title is a circumstance to be considered by the jury in determining his good faith." *Moate* v. *Rives*, 146 *Ga*. 425 (91 S. E. 420). In that case the defendant sought to set off the value of permanent improvements against the true owner of the land. The defendant was holding under a lease contract, in which there was a recital that the title of the lessor "is disputed by other persons (the rightfulness of the claim of title by such person is, however, denied)." It was also provided that if the title failed the lessee should not hold the lessor liable. It was insisted that this provision in the lease contract was such notice as would conclusively negative the bona fides of the lessee in erecting permanent improvements. In the opinion it was said: "It has been held by this court that the statute declaring that notice suffi-

cient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led will not prevent a purchaser of land, who has knowledge of a mere rumor that the title to the land he is buying is bad, from becoming a purchaser in good faith. *Williams* v. *Smith,* 128 *Ga.* 306 (57 S. E. 801) ; *Black* v. *Thornton,* 31 *Ga.* 641, 659. . . So we conclude that one may be the possessor of land in good faith, though aware of an opposing claim (where such knowledge would not of itself impute bad faith), if he *enters* in full confidence of his title or the title of one under whom he immediately claims; but this knowledge of an opposing claim of title is a circumstance to be considered by the jury in determining his good faith." "Loose, suspicious, vague rumors or reports will not do . . but the knowledge must be brought home to the party so that mala fides marks the transaction, if he afterwards buy." *Jordan* v. *Pollock,* 14 *Ga.* 145, 157.

Under the foregoing principles, was the notice given by Lizzie Harper to Durden sufficient to demand a finding against the bona fides of the latter ? She stated to Durden that the land belonged to Rhoda Carter's children or heirs, and that Durden had better look out. As a matter of fact the plaintiffs, as children of Rhoda Carter, were her heirs, but not as to this property. Rhoda Carter never owned the remainder interest in the land; consequently her heirs could not inherit from her the remainder interest. They took the remainder interest, it is true; but that remainder interest was derived from Timothy Carter, who executed a deed conveying the life-interest to his wife, Rhoda Carter, and the remainder interest to their children. That deed was dated in 1875, and construed by this court in 1902 in accord with what has just been said. *Tillman* v. *Banks,* 116 *Ga.* 250 (42 S. E. 517). When the statement mentioned was made by Lizzie Harper to Durden he held a deed, a quitclaim deed to be exact, from J. C. Banks, purporting to convey the entire interest in the land. Durden introduced a chain of deeds beginning with a deed from Rhoda Carter to James H. Smith, and successive conveyances through several parties into himself. The information given by Lizzie Harper, in view of the chain of title held by Durden, was not sufficient to conclusively prove the lack of bona fides.

It is insisted that under the evidence of Durden he made

all of the improvements after receiving the notice above mentioned in his evidence from Lizzie Harper, and for that reason the improvements can not be set off. "It has been decided by this court that where, pending a suit to recover land, the defendant places improvements on it, he is not entitled to set them up under the Civil Code, § 5587. *Richards* v. *Edwardy,* 138 *Ga.* 690 (76 S. E. 64). Here the presiding judge held that the defendants were not entitled to set off improvements against the recovery, except to extinguish mesne profits. This was certainly all the defendants could claim." *Hinesley* v. *Stewart,* 139 *Ga.* 7, 10 (76 S. E. 385) ; *Hall* v. *Collier,* 146 *Ga.* 815 (5) (92 S. E. 536). The foregoing decisions, of course, do not decide this precise issue, but they afford . some reason for the theory that notice after full purchase-price has been paid but before making any permanent improvements will not, as a matter of law, prevent a recovery for permanent improvements. Finally, by reference to what has been said in the division of the opinion next preceding, it will be seen that the information given by Lizzie Harper to Durden was not of such a character as would itself constitute notice which would be conclusive.

■ The next question presented is whether or not improvements, in a suit like the present, can be set off as against remaindermen. It is urged that the possession of Durden was not adverse to the remaindermen, because the remaindermen had no right of possession until the death of the life-tenant, and that permanent improvements can be set off only where the occupancy is adverse. Prior to the passage of the act of 1897 (Civil Code (1910), § 5587), when permanent improvements could only be set off as against mesne profits, that position might have been tenable. See, in this connection, *Dean* v. *Feely,* 69 *Ga.* 804; *Peters* v. *West,* 70 *Ga.* 343, 346; *Austell* v. *Swann,* 74 *Ga.* 278, 282; *Taylor* v. *Kemp,* 86 *Ga.* 181 (12 S. E. 296). "Where the premises are held bona fide under independent and adverse claims of title, then the party making such improvements is entitled to have their full value allowed him." *Dean* v. *Feely,* supra. "In an action to recover land, the defendant, who has bona fide possession of such land under adverse claim of title, may set off the value of *all* permanent improvements bona fide placed thereon." *Hawks* v. *Smith,* 141 *Ga.* 422 (4) (81 S. E. 200). The act of 1897 has been held constitutional. *Mills* v. *Geer,* 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934) ; *Lay* v. *Shep-*

*pard,* 112 *Ga.* 111 (37 S. E. 132). The act of 1897 wrought a great change on this question, in providing that the value of all improvements as described in that section could be recovered. If the recovery for permanent improvements did not exceed the mesne profits, it is obvious that the purposes of the act would fail in many, if not most, instances. In this instance the value of the permanent improvements was found to be, at the time of the trial, $900, the mesne profits $150. This court has consistently held, since the passage of the above-mentioned act, that all improvements might be recovered, and in several cases the parties recovering the land were remaindermen, and judgement was rendered against them for the permanent improvements. *Hicks* v. *Webb,* 127 *Ga.* 170 (3), 173 (56 S. E. 307); *Hawks* v. *Smith,* supra; *Ayer* v. *Chapman,* 147 *Ga.* 715 (95 S. E. 257). The true rule, we think, was laid down by Judge Powell in his Actions for Land, and was followed in *Hicks* v. *Webb,* supra: "Ordinarily, improvements made by a tenant for life inure to the benefit of the reversioner or remainder-man, and one purchasing the property from the life-tenant can not set off improvements made by the latter against the rights of the remainderman or reversioner to recover for the mesne profits accruing after the death of the life-tenant. But if it appears that the defendant purchased the entire fee, though by a title not valid as against the plaintiff (the remainderman), and that while holding adversely to the plaintiff's title, and claiming the entire fee, he in good faith placed permanent valuable improvements on the property during the life of the life-tenant, he may set off the value of the improvements, under the act of 1897."

■ It is insisted by movant that Durden is estopped, because of constructive notice afforded by the record in Tattnall County on August 22, 1878, and in Toombs County on February 21, 1908, of the deed from Timothy Carter to Tillman, trustee for Rhoda Carter. That deed, as stated above, conveyed a life-estate to Rhoda Carter, remainder to her children, the present plaintiffs. Constructive notice is evidence, as a matter of course. In a contest between deeds involving merely title, it would be conclusive. Civil Code (1910), § 4198. However, that code section does not purport to deal with the question of bona fides where an occupant of land is seeking to set off permanent improvements. The burden on this question is on the party asserting notice. *English-American Loan*

*&c. Co.* v. *Hiers,* 112 *Ga.* 823 (38 S. E. 103). In *Jordan* v. *Pollock,* 14 *Ga.* 145, 158 this court made clear the distinction between actual notice and constructive notice. The court said: "When our own court adjudicates this point, it so draws the distinction between personal notice proven either by positive or presumptive evidence, and notice which is a mere legal presumption, and which does not, as a consequence, necessarily affect the conscience of the party. . . We will take leave of this point by remarking that it would, perhaps, be more accurate to say that actual notice, in the case we have been considering, is shown when the proof, positive or presumptive, authorizes the clear and satisfactory conclusion that the purchaser had knowledge of the incumbrance, or would have had it if he had not wilfully declined to search for it, and thus his conscience is affected by it; and that constructive notice is that which arises out of a legal inference, or presumption strictly speaking, such as notice from a register, record, or some such matter, and which does not affect the conscience of the purchaser; because, notwithstanding the legal presumption, he may never have had absolute knowledge of the record or been put upon inquiry in relation to it."

"The terms 'good faith' and 'notice' are intimately related in jurisprudence, but are not of uniform meaning. The former retains, in some measure, the popular sense of honest belief, but its technical significance depends largely on the doctrine of notice as developed in the progress of the equity system. Considered with reference to and as influenced by 'notice,' the term 'good faith' bears several legal meanings according to the subject-matter of the litigation in which it is used. As applied to the purchase of a parcel of land, the title to which has passed from the grantor by a prior recorded deed or incumbrance, the constructive notice of the prior conveyance which the record imparts prevents one taking title subsequently from being a purchaser in good faith. Turk *v.* Funk, 68 Mo. 18, 30 Am. Rep. 771. When the controversy is between the record owner of land and a defeated occupant seeking pay for improvements, such constructive notice of adverse title will not impeach the good faith of the occupant in putting betterments on the land, and this can be done only by proof that he had actual notice of the successful title when the improvements were made. Hill *v.* Tissier, 15 Mo. App. 299. But in this class of cases the occupant may be found to have had actual notice of the adverse title from

proof that he knew other facts which, if followed up, would have led to notice; and if, with such knowledge of collateral facts, the occupant fails to investigate, he will be charged with knowledge of whatever would have been learned by proper inquiry. Lee v. Bowman, 55 Mo. 400. . . It goes without saying that no court will deny the occupant relief because his title turned out to be bad, for this would defeat the remedy, which proceeds on the theory that the improver will lose to a better title, and aims to reimburse him for enhancing, in good faith, the value of the land. Jones v. Perry, 10 Yerg. (Tenn.) 59, 30 Am. Dec. 430; Krause v. Means, 12 Kan. 335. Nevertheless, faith in his own title, as against an adverse one of which he was aware, is not enough to confer the right to reimbursement. This is according to the weight of adjudication and the texts of commentators." Richmond v. Ashcraft, 137 Mo. App. 191 (117 S. W. 689, 692), citing numerous authorities. See also *Rosser* v. *Cheney,* 61 *Ga.* 468. We hold that the record of the deed afforded constructive notice, which is relevant evidence, and, though conclusive on the matter of title, was not necessarily conclusive on the question of good faith.

▮ It is a familiar principle of law that a purchaser of land is conclusively charged with notice of recitals contained in a deed which constitutes one of the muniments of his own title. *Hancock* v. *Gumm,* 151 *Ga.* 667 (107 S. E. 872, 16 A. L. R. 1003). "When a conveyance has been properly recorded, the record is constructive notice of its contents, and of all interests, legal and equitable, created by its terms." 2 Devlin on Real Estate (3d ed.), 1305, § 710. "It is presumed that a purchaser has examined every deed and instrument affecting the title. He is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed." Id. § 710a; *Cheney* v. *Rodgers,* 54 *Ga.* 168, 170; *Rosser* v. *Cheney,* 61 *Ga.* 468. For a general discussion of the rule as it prevails in various jurisdictions, reference is made to 31 C. J. 324, 325, 326, §§ 32, 33, 34; 14 R. C. L. 22, § 11. Is such notice conclusive against the claim of bona fides in a proceeding to set off improvements in this case where the title of the occupant is bad? The only deed which contains notice to Durden that his title was not good for the entire interest is the deed from Timothy Carter to Rhoda Carter mentioned above. That deed was recorded. If Dur-

den had searched through his chain of title to that deed, he would have discovered that a conveyance from Rhoda Carter could only convey the life-interest. The recitals in the deeds constituting the chain of title, that is the muniments of title of Durden, amount to exactly the same as constructive notice because of the record of the deed from Timothy Carter to Rhoda Carter. That notice is not actual. Therefore the same rule must be applied to notice by reason of recitals in the muniments of title as in the record of deeds. The contents of deeds in a chain of title preceding the immediate grant to the occupant are proper evidence to be considered by the jury, but not conclusive as against a claim of bona fides in the question of setting off improvements.

■ Movant complains that the verdict is contrary to the following charge of the court: "I charge you  .  .  that if you should find that Mr. Durden made permanent valuable improvements and they were not done in good faith, that he had notice, and I charge you that anything that would put a person on inquiry and direct attention is notice of all such things as such inquiry may lead to. Ignorance of a fact due to negligence is equivalent to knowledge under that rule of an outstanding title; and [if] he proceeded to put valuable improvements upon the premises, then I charge you he would have no right to set them off at all, and your verdict ought to be for the plaintiffs for the premises and whatever you may find to be the fair rental value of the premises for the year 1930." In view of what has been ruled above, this ground of the motion is without merit.

■ It is urged that the deed from Rhoda Carter to Smith, reciting as a consideration "the sum of fifty ($50.00) dollars in hand paid, and the further consideration that all lawsuits whether civil or criminal, now pending between Tim Carter and Jas. H. Smith, Rhoda Carter, and James H. Smith, or Daniel Bird and Tim Carter,  .  .  shall be now settled and forever stopped," was void on its face, because it appeared that the consideration was in settlement of a criminal prosecution, passed no title, and was inadmissible. This contention is not sound. The quoted recital shows that the grantee paid a money consideration of $50 for the sixty acres of land. It recited another consideration in addition to the $50; that is, the settlement of litigation whether *civil or criminal*. The land was sold to the present occupant, Durden, for $600. There is no

evidence to indicate that this was not its full value. Moreover it appears that the land was practically without improvements, and very little of it susceptible, in its then condition, of cultivation. It can not be said as a matter of law that the consideration of the deed was the settlement of a criminal prosecution. But even if it was, and even if the deed could have been set aside by Rhoda Carter on the ground mentioned, and even though it was inffectual to convey valid title to Smith, that does not negative the good faith of Durden. "An occupant's claim for betterments is not defeated merely because his title proves to be bad." Richmond v. Ashcraft, supra. If it were otherwise, no occupant could ever recover, under our statute, for permanent improvements when the title to the land was found to be in his adversary. The statute was enacted to meet just that situation. This document, even though immaterial and inadmissible on a contest as to title to the property, was relevant and material on the question of the bona fides of the defendant in making permanent improvements. The court did not err as contended.

■ The seventh ground of the motion complains that the court illegally admitted in evidence a deed made by R. N. Adamson, sheriff, to James H. Smith, conveying the land in dispute, over objection that the deed was not accompanied by an execution to give the sheriff authority to sell the land and the execution was not accounted for, and it did not appear that Dock Bacon ever had any title to the land; and if he had, it was junior to the title of plaintiff. For the same reasons stated in the next preceding division, the admission of this document in evidence was not error. *Calhoun* v. *Thompson,* 171 *Ga.* 286 (155 S. E. 183).

■ The verdict is supported by evidence.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents from the ruling in headnote 1(b).*