## LANIER *et al. v.* BRYANT; *et vice versa.*

Nos. 10312, 10313. FEBRUARY 27, 1935.
REHEARING DENIED MARCH 2, 1935.

*Tye, Thomson & Tye,* for Lanier et al.
*James E. Garst* and *Wellner, Meadow & Russell,* contra.

ATKINSON, Justice. In 1893 John L. Bryant died intestate,

seized and possessed of certain realty consisting of a house and city lot occupied by him as a dwelling. He left no debts. He was survived by his widow, one married daughter, Mrs. Maxwell, and J. H. Bryant, a youth nine years of age who was the only living child of George Bryant, a son who predeceased John L. Bryant. No other descendant survived him. The widow and Mrs. Maxwell were living in the house with John L. Bryant at the time of his death, and both continued to live there until the death of the widow in 1899. Thereafter Mrs. Maxwell continued to live in the house until February 8, 1927, at which time she as sole heir of John L. Bryant sold the property to E. S. and T. M. Lanier, and executed to them a deed purporting to convey the entire title to the house and lot. Mrs. Maxwell died in 1928. In 1932 J. H. Bryant as an heir of John L. Bryant, deceased, instituted an action against the Laniers, seeking to recover a half interest in the land and mesne profits. The defendants filed an answer. They subsequently offered an amendment in which it was alleged: "That plaintiff is estopped from asserting title to any interest in the property sued for, by reason of the following facts: that for some time prior to the purchase of said property by these defendants from Caroline V. Maxwell they conducted a store at 568 Decatur Street in the City of Atlanta, not far from the property in question, and they knew that said Mrs. Maxwell was living on said property and had been living there for a great many years. These defendants had no information whatsoever as to her title to the property. That shortly before they purchased said property from Mrs. Maxwell they were approached by the plaintiff and informed by him that Mrs. Maxwell was his aunt, and that she owned the property sued for, and that she wanted to sell it for $1000, and plaintiff wanted defendants to buy said property from his aunt. These defendants stated that they would not consider giving $1000 for the property, but, if Mrs. Maxwell had a good title thereto, would be willing to give her $500 for it; whereupon the plaintiff stated that his aunt did own the property and that there was nothing against it. Later the plaintiff again approached these defendants and informed them that he had talked to his aunt, and that she would not take $500 for the property, but that he thought she would take $800 for it. These defendants declined to give that, but stated that they would give as much as $650; whereupon the plaintiff afterwards reported

to them that his aunt would take $650 for the property, and they thereupon purchased the same from her. These defendants say that in making said purchase they believed the representations of the plaintiff that said Mrs. Maxwell was the sole owner of said property; that they had no knowledge of plaintiff having any interest whatsoever in the property; that he never asserted to them that he had any interest therein, but represented the property as belonging to his aunt. These defendants had no way of knowing that the plaintiff had an interest in the property, and in purchasing said property from said Mrs. Maxwell they did so relying upon the representations of the plaintiff that the property belonged to his aunt." The amendment was allowed over objections: "1. That it does not allege that the plaintiff had any knowledge that he owned any interest in the land sued for at the time he is alleged to have made the representations referred to in said amendment. 2. It is not alleged in said amendment that the acts or representations or conduct of the plaintiff set out in said amendment were done intentionally for the purpose of influencing the conduct of the defendants. 3. . . that it shows on its face that the defendants had equal opportunity with the plaintiff to know the truth." The plaintiff excepted pendente lite. On the trial a verdict was returned for the plaintiff. The defendants' motion for a new trial, on grounds hereinafter stated, was overruled, and they excepted. The plaintiff filed a cross-bill of exceptions assigning error on the allowance of the amendment.

■ The judge refused to allow one of the defendants, as a witness in his own behalf, to testify: "I have paid the taxes and made repairs on the property." There was no other evidence or offer of evidence tending to show the amount of the taxes or the cost of the repairs. It is held that the rejection of this evidence was not cause for a reversal. See opinions of special concurrence, infra.

■ Evidence as to declarations by Mrs. Maxwell, contained in an affidavit that "she is the daughter and sole heir at law of John L. Bryant, and that he died March 9, 1893," and that "deponent makes this affidavit for the purpose of inducing the Atlanta Title and Trust Company to pass title to [the property in question] which is this day being sold to E. S. & T. M. Lanier," were parts of the res gestæ when considered in connection with other evidence tending to show that the declarant was in possession of the land at

the time the declarations were made, and that the named company was employed by the Laniers to pass on the title, and that upon their approval of the title the sale was completed by execution of a deed. The declarations, being of the character indicated, were admissible on the questions of good faith and diligence (Code of 1910, § 5737; Code of 1933, § 38-115) of the defendants in support of their plea of estoppel; and the court erred in excluding the declarations from evidence on objection that they were not binding on the plaintiff suing as a coheir.

■ The court charged the jury: "If one who by acts and declarations induces another to buy property as the property of a third person, he is estopped from setting up title to himself to such property, provided the purchaser acts upon such acts or declarations, and not upon his own knowledge or judgment." The court having thus charged, if the defendant desired further instruction upon the principle embodied in the Code of 1910, § 4623 (Code of 1933, § 37-703), that "misrepresentation of a material fact, . . if made by mistake and innocently and acted on by the opposite party, constitutes legal fraud," there should have been an appropriate written request. The ground of the motion for new trial complaining of the omission, without request, to charge the principle stated is without merit.

■ "Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud." Code of 1910, § 4623; Code of 1933, § 37-703. "Where the estoppel relates to the title to real estate, the party claiming to have been influenced by the other's acts or declarations must not only be ignorant of the true title, but also of any convenient means of acquiring such knowledge. Where both parties have equal knowledge or equal means of obtaining the truth, there shall be no estoppel." § 5737 (1933, § 38-115). "In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." § 5738 (1933, § 38-116). If a person has legal title to land, which fact he does not know but has convenient means of knowing, and after a lapse of twenty-seven years, during which time he was under no

legal disability, he still has not learned the fact of his interest in the land, and in those circumstances he induces one to buy the land from a third person by representations that the land is the property of such third person, his misrepresentations to the purchaser innocently made, coupled with his delay in ascertaining the truth, will amount to constructive fraud within the meaning of the Code of 1910, § 4623 (Code of 1933, § 37-703), and (§§ 5737, 5738; 1933, §§ 38-115, 38-116) may be pleaded as an estoppel by the purchaser on the faith of the title of his vendor. See *Equitable Mortgage Co.* v. *Butler,* 105 *Ga.* 555 (31 S. E. 395); *Brice* v. *Sheffield,* 121 *Ga.* 216 (48 S. E. 925); *Sewell* v. *Norris,* 128 *Ga.* 824 (58 S. E. 637, 13 L. R. A. (N. S.) 1118); *Tune* v. *Beeland,* 131 *Ga.* 528 (62 S. E. 976), applying the general rule that if an owner induces another to purchase his property from a third person he will be estopped to assert his title against the purchaser. The charge complained of in the fourth ground of the motion for new trial, in so far as it stated that "the party who is claimed to have influenced the conduct of the other must act intentionally for that purpose," was too broad as applied to the instant case, and was not in accord with the principle above announced.

The amendment to the answer, setting up estoppel, was appropriate; and the judge did not err in allowing the amendment over the stated objections.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*

ATKINSON, Justice, concurring specially. The ruling stated in the first division of the decision implies that the evidence might have been admissible if there had been other evidence or offer of evidence as to the amount paid for taxes and repairs. The writer can not assent to that view. Did the judge err in refusing to permit one of the defendants to testify: "I have paid the taxes and made repairs on the property"? The evidence was offered to go in reduction of damages which the plaintiff might recover as mesne profits, the contention being that plaintiff could only recover net profits. The action is complaint for land, a statutory action of ejectment, a plain action at law, in which the plaintiff may recover by way of damages all such sums of money to which he may be entitled by way of mesne profits together with the premises in dispute. Code of 1910, § 5575; Code of 1933, § 33-104. Such plain-

tiff may not recover in a separate action "mesne profits which may have accrued to him from the premises in dispute." § 5576 (1933, § 33-105). A claim in such an action for damages "by way of mesne profits" is essentially in tort. After referring to these sections of the Code, it was said by Judge Powell in his excellent treaties: "We usually think of the expression 'mesne profits' as being equivalent to the word 'rents,' and as including only the natural profits of the land accruing to the tenant in possession between the dates of the commencement and of the termination of the possession held without right. It includes not only this, but more—it also includes all damages arising from trespasses committed by the tenant in possession pending his unlawful occupancy. For instance, the plaintiff may recover, by way of mesne profits, for the cutting of timber, the destruction of houses, and other acts of like character. In one case there is an intimation that where the defendant has been guilty of wilful and intentional wrong, punitive damages may be included in the recovery of mesne profits, and as the action sounds in tort, there seems to be no good reason why this intimation is not sound." Powell on Actions for Land, 543, § 410. Ordinarily a wrong-doer may not profit by his wrong. If a defendant in ejectment could do so by charging plaintiff with sums he had paid for taxes and repairs during his wrongful occupancy, it would be possible, whether or not his entry was innocent and in good faith, to defeat altogether a recovery of damages resulting from his wrongful act. This is incompatible with the provisions of § 5575 (1933, § 33-104), and with the theory that one can not recover on the basis of his own wrong. There is no law authorizing a wrong-doer to charge the true owner for any such expenditures. It was not until the act of 1897 (Ga. L. 1897, p. 79) that even an innocent holder could have an allowance of any kind as against mesne profits. It was declared by that law that a defendant "who has bona fide possession of such land under adverse claim of title may set off the value of all permanent improvements bona fide placed thereon by himself or other bona fide claimants under whom he claims" (Code of 1910, § 5587; Code of 1933, § 33-107) ; but this does not confer a right of set-off to a defendant, whether or not he is such bona fide holder and has expended the money in good faith, for purposes other than "permanent improvements" placed on the land.

In *Hecht* v. *Snook & Austin Furniture Co.,* 114 *Ga.* 921-923 (41 S. E. 74), it was said: "There is nothing in the statutes of this State which authorizes a defendant in a suit at law to set off, as a matter of legal defense to a suit on a contract, damages arising from a tort committed by the plaintiff; or to set off, in a suit for damages arising from the commission of a tort by the defendant, a claim growing out of a contract between the plaintiff and the defendant." The action being at law, the defendant's legal rights are involved. If after the tortious act of eviction the wrong-doer has expended money for payment of taxes and making repairs on the property, and if the true owner has incurred a liability for payment of money so expended, such liability could only arise out of an implied contract to repay money which had been expended for his use. So in the instant case the defendants could not, upon legal principles, set off the demand based on contract against the plaintiff's right to damages by way of mesne profits. As is apparent from what has been said, this is not an equitable action for an equitable accounting. There was not even a plea setting up a right to payment for money expended for "taxes" and "repairs," or any plea to put the plaintiff on notice of the demand which he would be required to meet, so that he could prepare therefor. It was merely a bald attempt to introduce evidence of a demand which, if allowable at all, was essentially on the theory of set-off based on the implied contract. Whatever might be said in other jurisdictions, such evidence could not be given in this State, in view of the statutes and decisions of this court which have been cited. The decision in *Graham* v. *Lanier,* 179 *Ga.* 744 (4) (177 S. E. 574), not concurred in by all the Justices, in so far as relates to "taxes," is opposed to the views herein expressed; but it is not a controlling precedent, nor did it give due weight to the statutes of this State. It seems to have treated the question as if involved in an equitable accounting. The court did not err in rejecting the evidence mentioned at the beginning of this opinion.

BELL, Justice, concurring. The question whether in a suit for land and mesne profits the defendant or defendants might be entitled to set off against the claim for mesne profits amounts paid for taxes or repairs is not really involved in the present case, since the defendants failed to introduce or even to offer evidence as to the amounts expended for these purposes. But, as the question has

been discussed in the foregoing special concurrence, the writer is inclined to make some reference to it, and to call attention to certain principles which are deemed to be applicable. In *Harper* v. *Durden,* 177 *Ga.* 216 (170 S. E. 45), it was said that a counter-claim for improvements is founded upon principles of equity, and could be asserted independently of statute. In *Graham* v. *Lanier,* 179 *Ga.* 744 (supra), it was said, Mr. Justice Atkinson dissenting, that a counter-claim for taxes would seem to rest upon the same footing. Several decisions from other jurisdictions were cited in support of this statement, and pertinent extracts from these decisions will now be quoted.

In Wallace *v.* Berdell, 101 N. Y. 13 (3 N. E. 769), it was said: "It would be manifestly unjust to confine the owner of the property withheld from him to the rents actually received by the party required to make restitution. The owner should have either those rents, or the rental value, as may be just under the circumstances. In either case payment necessarily made for taxes and ordinary repairs would be involved in ascertaining the rents received or the rental value. The mesne profits consist of the net rents after deducting all necessary repairs and taxes, or the net rental value, or the value of the use and occupation. That is all of which the party from whom the possession has been withheld has been deprived. For this he should be made whole, and he should not suffer from any mismanagement, negligence, or improvident expenditure by the party in possession. On the other hand, he should not be relieved from any necessary diminution of the gross rents or rental value, or gross value of the use and occupation to which he would have been himself subjected had he not been disturbed in his possession. The amount justly chargeable for the rents which the owner derived, or might with reasonable diligence have derived, for the property, and the amount of the expenditures which have been properly made, and which the owner would have been obliged to make had he remained in possession, are matters to be determined by the referee." In Ringhouse *v.* Keener, 63 Ill., 230, 237, it was held: "Appellant offered to prove as a set-off the amount of taxes paid by him on the land whilst occupied by him, but the evidence was excluded by the court. As the action is given to enable the owner of the soil to have a fair and just compensation for the use of the land, such rules should be adopted as are best calculated to attain

that end. Here, appellant proposed to prove the payment of a large sum with which the land stood charged, and for which it would have been sold had it not been paid. It was money paid for the use of appellee, and for the preservation of the title she holds. Then, to prevent appellant from having the taxes deducted from the rents, would enable appellee to recover more than the rents and profits derived from the use of the land. If the jury should allow the usual rents, then the question would be how much would the premises have rented for, the tenant paying the taxes, or how much if they were paid by the owner of the soil. In this way the true rental value could be ascertained, and the value of the rent would thus be reduced the amount of taxes thus paid by the defendant. It is but just and proper, in any view of the question, that taxes thus paid should be deducted from the rents and profits." In Muthersbaugh v. McCabe, 22 Pa. Super. 587, it was held that where persons have entered in good faith into possession of land, and have received the rents thereof, they are entitled, in an assessment of mesne profits in an action of ejectment, to have deducted, from the rents actually collected, taxes, insurance, improvements, necessary repairs and agent's commissions. In McInerney v. Beck, 10 Wash. 515 (39 Pac. 130), it was said: "Where, in ejectment, judgment is rendered for plaintiff, and it is shown that the improvements placed by defendant on the land are equal to its rental value while defendant was in possession, defendant is entitled to recover from plaintiff all taxes paid by him, and to have the amount thereof charged on the land. · . . It appears from this record that these respondents bought this land in good faith, went on it, made a bona fide residence, and in good faith made valuable improvements to the extent of several thousand dollars; that the property has been thereby benefited; that they have paid quite a large sum in taxes and for the improvement of streets. And we do not think it would be equitable to allow the appellant to stand back, and not assert her claim, while all these improvements were being made for her benefit, and now demand possession of the land, with its value thus enhanced, without recompensing the respondents in this particular. And, in the absence of a statute, we should be inclined to allow the defendants the value of the improvements over and above the rental value during the time of the detention of the land, as a counterclaim, but section 534 of the Code of Procedure seems

to indicate that the value of the improvements shall only be allowed as a set-off against damages for detention, and that such damages can only be recovered for withholding the property for the term of six years next preceding the commencement of the action. This restriction, however, does not ·apply to taxes or street-grade assessments." In Holly v. Gibbons, 177 N. Y. 401 (69 N. E. 731), a purchaser from executors was required to restore to them the property in order that it might be sold to pay debts of the testator. The court said: "Such restoration should be accompanied by an accounting with respect to the rents and profits, after proper deductions for taxes and ordinary repairs."

If, as stated in the concurring opinion, a claim for mesne profits is in the nature of an action for damages for a tort, it would seem that the defendant might prove payments for taxes and necessary repairs in reduction of the damages claimed by the plaintiff, and that even without pleading. The Code of 1933, § 110-405, provides: "In all cases where the damages are not liquidated and a judgment by default is entered, the plaintiff shall be required to introduce evidence and establish the amount of damages. The defendant may contest the amount of such damages before the jury, with a right to move for a new trial in respect to such damages and to except as in other cases." In *Equitable Building & Loan Asso.* v. *Holloway*, 114 *Ga.* 780 (4) (40 S. E. 742), the plaintiff sued for land and mesne profits, and the case was in default. This court held: "The truth of an allegation made in such a petition as to the value of the premises for rent is not admitted by a failure to answer; and the demand for rent, being in the nature of a claim for unliquidated damages, must be proved." The decision in *Graham* v. *Lanier*, supra, the writer submits, is based upon sound principle and is supported by authority; nor does it fail to give due weight to the statutes of this State. On the contrary, it is in accord therewith. But repairs might rest upon a different basis from taxes.