S89A0231, S89X0249. DIXON et al. v. MURPHY; and vice versa.
(385 SE2d 408)

WELTNER, Justice.

Dixon conveyed twelve acres of land to Chapman. Chapman obtained a loan on the property, and later conveyed the land to Murphy. Dixon and Murphy assumed Chapman's loan and paid it.

It was at that point that Dixon and Murphy — who are mother and son — fell out. Dixon claims that the land was to be reconveyed to her when the loan was paid. Murphy, however, refused to convey, whereupon Dixon and Chapman filed an action to cancel and set aside the deed.[1] After hearing the evidence, the jury returned a verdict for Dixon and Chapman. The trial court granted to Murphy a judgment n.o.v., except for two acres on which a house was located. That parcel was awarded to Dixon. Dixon and Chapman appeal the judgment n.o.v., and Murphy cross-appeals the portion of the judgment that concerns the two acres.

1. While the property was still titled in Chapman, Dixon declared bankruptcy. Her petition disclosed no interest, of any kind, in the questioned property. Before Dixon was discharged of all of her sched-

---

[1] The relief sought is governed by OCGA § 53-12-26, relating to implied trusts. See *Harrell v. Harrell*, 249 Ga. 170 (290 SE2d 906) (1982), and note the comments of now Chief Justice Marshall:

Finally, hidden beneficial ownership can be pernicious, and often used to evade or avoid just obligations, creating uncertainty and prolonged litigation (such as this very case). Observers might justifiably view with suspicion the veracity of one who says, "My hand and seal solemnly attest it, but that is not at all the way it was!" Nonetheless, the Code sections we have cited appear to sanction hidden trusts, and we must be guided by the law as given by the General Assembly. [Id. at 172.]

uled debts by bankruptcy, Chapman conveyed the property to Murphy. Four months intervened between Chapman's conveyance to Murphy and Dixon's discharge in bankruptcy. At no time did Dixon amend her petition to disclose her claimed interest in the twelve acres.

2. Murphy's defense includes his contention that his mother is barred by the doctrine of unclean hands from seeking equitable relief.[2] We agree.

The evidence is undisputed that Dixon has completed a fraud upon her creditors, by:

(a) swearing in the bankruptcy court that she owned *no* interest in the property;

(b) failing to amend her bankruptcy petition to disclose the interest that she now claims; and

(c) obtaining the discharge of all of her scheduled debts —notwithstanding that, according to her, she owned twelve acres of land during the pendency of the bankruptcy proceeding.[3]

3. (a) What is presented here is more than a case of silence and inaction evidencing intent to defraud; it is a case of success in defrauding. By extending to her the relief that equity reserves for those whose hands are clean, we can only serve to encourage others to make (or to *say* that they have made) hidden trusts, and then deny their existence in bankruptcy.

(b) The justice system cannot permit itself to become an implement of fraud. The judgment in Case No. S89A0231 is affirmed insofar as it vests title to any of the property in Murphy.

4. As to Murphy's cross-appeal (Case No. S89X0249), we are aware of no authority that vests in a trial court the power to make equitable distribution in a case of unclean hands. Accordingly, that portion of the judgment awarding the smaller parcel of property to Dixon is reversed.

*Judgment affirmed in Case No. S89A0231. All the Justices concur, except Gregory and Bell, JJ., who dissent. Judgment reversed in Case No. S89X0249. All the Justices concur.*

---

[2] "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." OCGA § 23-1-10. See *Fuller v. Fuller*, 211 Ga. 201, 202 (84 SE2d 665) (1954) and *Sewell v. Norris*, 128 Ga. 824 (58 SE 637) (1907). See also *Sparks v. Sparks*, 256 Ga. 788, 789 (353 SE2d 508) (1987):

The unclean-hands doctrine does not bar a litigant from seeking equitable relief unless the misconduct relates directly to the transaction concerning which relief is sought. . . . [Cits.] John is thus barred from seeking a resulting trust in the residence, because his misconduct of fraudulently transferring the house to Nancy [for the purpose of shielding the home from a potential judgment creditor] relates directly to the transaction from which he seeks relief — the transfer of the house placing title in Nancy.

[3] That asset, of course, should have been devoted to paying Dixon's creditors.

GREGORY, Justice, dissenting.

I respectfully dissent from the majority opinion in S89A0231.

The evidence in this case is conflicting. Appellate courts should follow the rule that they must accept the facts as found by the fact finder, if supported by any evidence, and they should construe any conflicting evidence in the record in favor of the factfinder's verdict. *Pendley v. Pendley*, 251 Ga. 30, 31 (302 SE2d 554) (1983). In this case, unfortunately, the majority has substituted itself for the fact finder. Therefore, a review of the record as the jury apparently viewed it may be useful.

This property has been through several transfers, and these transfers give a clear picture of Dixon's understanding, or lack thereof, of the differences between legal and equitable title. Dixon first transferred the property to Chapman for Chapman's use as collateral for a loan with which to start a restaurant. This transfer occurred before bankruptcy. Dixon and Chapman had an oral understanding that Chapman would reconvey the property back to Dixon when the restaurant failed or was no longer needed. Dixon testified at trial, during direct and cross-examination, that she believed Chapman could have conveyed the property to anyone because she owned it. It is clear from the record that Dixon understood that she had a promise, but that she did not understand this gave her an ownership interest. Equitable ownership was clearly not a familiar concept to her.[4] Chapman then took out a loan on the property and started her business. Sometime thereafter, Dixon filed for bankruptcy. In her petition, she claimed no interest in the property. While Dixon was in the bankruptcy court, Chapman sought to fulfill her promise by offering to reconvey the property to Dixon. At that time, however, Dixon's son needed some collateral for his new business.[5] Therefore, Dixon asked Chapman to convey the property to Murphy, and Dixon and Murphy would assume the loan Chapman had taken out on the property. This was done with the full knowledge of Chapman's creditor. Dixon testified that Murphy agreed he would have the use of the property until the "Chapman" loan was paid. Dixon testified during direct examination, and the jury apparently believed, that she, not her son, paid off the loan. Almost immediately after Chapman conveyed the property

---

[4] During cross-examination, Dixon was asked:
Q. What do you interpret that to mean when they say a statement of all of your property?
A. In other words, it's everything that's in my name that I own, my equipment, my trucks, any material I had. . . .
Q. You stated just a few minutes ago that you owned this property. Why didn't you list that?
A. Sir, I didn't own this property. I had sayso over [it] is all.
[5] The purpose of this transaction was much the same as for Chapman.

to Murphy, he conveyed it to Freeman, who conveyed it back to Murphy a little more than two years later.[6] This suit arose after Dixon had paid off the loan and Murphy refused to convey the property to Dixon.[7]

From these facts, the majority finds "fraud" because Dixon failed to amend her bankruptcy petition to disclose her equitable interest that arose from the Chapman to Murphy deed that conveyed the legal title to Murphy. The courts have held many times that there can be no fraud absent an intent to defraud. E.g., *McDaniel v. Green*, 156 Ga. App. 549, 552 (275 SE2d 124) (1980).[8] Mistake and misunderstanding of legal and equitable concepts do not give rise to an action for fraud.

The transcript supports the jury's determination that there was no intention to defraud. The jury was charged on the Doctrine of Unclean Hands, and it still entered a verdict in her favor. Therefore, because the majority finds fraud where the jury did not, Murphy, who paid nothing for the property, now has it all. Dixon, who acquired it twice, paying close to $12,000 the second time, now has nothing. Dixon's fight is not with her creditors, but with Murphy. The creditors, whom the majority thinks were defrauded, also now have nothing, and Murphy, who failed to keep his promise to his mother, gets it all.

This is simply a case properly tried before a jury where the necessary factual questions were resolved. This court should not so lightly substitute its opinion of the evidence for that of the jury.

I am authorized to state that Justice Bell joins in this dissent.

DECIDED NOVEMBER 22, 1989 —
RECONSIDERATION DENIED DECEMBER 5, 1989.

*Brown & Romeo, H. Eugene Brown, Robert T. Romeo,* for appellants.

---

[6] This conveyance occurred while Dixon was still in the bankruptcy court. Murphy's counsel asked Dixon on cross-examination:

Q. Did you own the property during that period of time [while Freeman held it]?

A. Evidently if Mr. Murphy had the right to transfer it, they considered I didn't.

Q. So you didn't have — when Mr. Freeman held this property, you didn't have the right to tell Mr. Freeman anything what to do with this property —

A. No, Sir. I had nothing to do with that. That was Mr. Murphy's transaction.

[7] This dispute was brought to a head when Murphy demanded that Dixon start paying rent in order to remain in the house.

[8] It is interesting to note that the cases the majority cites for the Doctrine of Unclean Hands, at p. 644, n. 2, all involve collusion and intentional misconduct between the parties. The record in this case contains no such evidence, conflicting or otherwise. The argument that the majority creates a new rule of law, one can have fraud absent intent, is supported by the absence of a cite to any authority, controlling or persuasive.